UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN THE MATTER OF THE
APPLICATION OF OXUS GOLD PLC
FOR ASSISTANCE BEFORE A
FOREIGN TRIBUNAL

**DOCUMENT FILED
ELECTRONICALLY**

Hon. Garrett E. Brown, Jr., U.S.D.J.

Hon. John J. Hughes, U.S.M.J.

Index No. MISC-06-82

Motion Returnable:

---

**Memorandum of Law in Support of Respondent's Motion to Vacate the
Court's Orders of August 14, 2006 and August 18, 2006, to Quash the
Subpoena Issued to Jack A. Barbanel, and to Award Fees and Costs**

---

**LOWENSTEIN SANDLER** PC
Attorneys at Law
65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500
Attorneys for Respondent
    Jack A. Barbanel

On the Brief:

    Douglas S. Eakeley
    Barbara S. Schweiger
    Alan S. Modlinger

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ............................................................ 1

STATEMENT OF FACTS ................................................................... 2

LEGAL ARGUMENT ........................................................................ 12

POINT I     MR. BARBANEL WAS NOT PROPERLY SERVED..................... 12

    A.     Oxus Did Not Comply With the Hague Convention On
        Service. ..................................................................... 12

    B.     Oxus Did Not Tender the Required Fees. ........................... 13

POINT II    THE SUBPOENA IS NOT AUTHORIZED BY 28 U.S.C.
        § 1783. ..................................................................... 14

    A.     28 U.S.C. § 1783 Is Inapplicable. .................................... 14

    B.     The Requirements of 28 U.S.C. § 1783 Have Not Been Met. ............ 17

POINT III   THE SUBPOENA IS NOT AUTHORIZED BY 28 U.S.C.
        § 1782. ..................................................................... 19

    A.     Oxus's Application Does Not Satisfy the "Residence"
        Requirement of 28 U.S.C. § 1782. .................................... 21

    B.     The Discovery Is Not "For Use" In A "Proceeding In A
        Foreign Or International Tribunal." .................................. 23

        1.     *The Information Sought By The Subpoena Is Not
            Relevant To, Much Less Admissible In, The Foreign
            Proceedings.* ...................................................... 23

        2.     *Section 1782 Does Not Apply to International
            Arbitration.* ...................................................... 28

C.    Oxus Is Not An "Interested Person" In the Actions Currently
      Pending in the Kyrgyz Courts. ...............................................................29

D.    Relevant Factors Weigh Against Exercise of the Court's
      Discretion to Authorize Discovery........................................................30

POINT IV    OXUS SHOULD PAY MR. BARBANEL'S ATTORNEYS'
            FEES AND COSTS INCURRED IN QUASHING THIS
            IMPROPERLY-OBTAINED SUBPOENA. .......................................34

CONCLUSION ....................................................................................................35

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

Am. Int'l Life Assurance Co. v. Vazquez, No. 02 Civ. 141 (HB), 2003 WL
    548736 (S.D.N.Y. Feb. 25, 2003)...................................................................34

In re Application for an Order Permitting Metallgesellschaft AG to Take
    Discovery, 121 F.3d 77 (2d Cir. 1997).....................................................20, 34

In re Application of Euromepa, 154 F.3d 24 (2d Cir.1998) .....................................25

In re Application of Imanagement Servs. Ltd., Civ. Action No. 05-2311
    (JAG), 2006 U.S. Dist. LEXIS 8876 (D.N.J. Feb. 28, 2006)................passim

In re Application of Ishihara Chemical Co., Ltd., 251 F.3d 120 (2d Cir.
    2001) ..............................................................................................................26

In re Application of Sarrio, S.A., 119 F.3d 143 (2d Cir. 1997)...............................22

Badman v. Stark, 139 F.R.D. 601 (M.D. Pa. 1991)...................................................14

Bayer AG v. Betachem, 173 F.3d 188 (3d Cir. 1999)...............................................20

Blackmer v. United States, 284 U.S. 421 (1932)......................................................15

Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44 (S.D.N.Y. 1996)............33

In re Dennis, 330 F.3d 696 (5th Cir. 2003) .............................................................14

Ellis v. ICC, 237 U.S. 434 (1915)............................................................................24

In re Imanagement Servs., Ltd., No. Misc. 05-89 (FB), 2005 WL 1959702
    (E.D.N.Y. Aug. 16, 2005) .......................................................................passim

Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004)................passim

John Deere Ltd. v. Sperry Corp., 100 F.R.D. 712 (E.D. Pa. 1983).........................26

John Deere Ltd. v. Sperry Corp., 754 F.2d 132 (3d Cir. 1985)...............................26

Jones v. SEC, 298 U.S. 1 (1936) ..................................................................24

Klesch & Co. Ltd. v. Liberty Media Corp., 217 F.R.D. 517 (D. Colo. 2003) .......14

Klockner Namasco Holdings Corp. v. Daily Access.com, Inc., 211 F.R.D.
        685 (N.D. Ga. 2002) ..........................................................................14

In re Kolomoisky, No. M19-116, 2006 WL 2404332 (S.D.N.Y. Aug. 18,
        2006) ...................................................................................................22

In re Letter of Request from Crown Prosecution Serv. of United Kingdom,
        870 F.2d 686 (D.C. Cir. 1989).....................................................27, 34

In re Microsoft Corp., 428 F. Supp. 2d 188 (S.D.N.Y. 2006).............................21

Nat'l Broad. Co., Inc. v. Bear Stearns & Co., Inc., 165 F.3d 184 (2d Cir.
        1999)...................................................................................................28

Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03 Civ 1382 RWS,
        2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003)...............................34

Norex Petroleum Ltd. v. Chubb Insurance Co. of Canada, 384 F. Supp. 2d
        45 (D.D.C. 2005) ...............................................................................22

Republic of Kazakhstan v. Biedermann Int'l, 168 F.3d 880 (5th Cir. 1999)...........28

In re Sealed Case, 832 F.2d 1268 (D.C. Cir. 1987)....................................................18

Shenouda v. Mehanna, 203 F.R.D. 166 (D.N.J. 2001)......................................12, 13

Smoothline Ltd. v. North Am. Foreign Trading Corp., No. 00 CIV 2798
        DLC, 84256, 2000 WL 1015949 (S.D.N.Y. July 24, 2000) ..................23, 32

Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct., 482
        U.S. 522 (1987) .................................................................................24

Tedder v. Odel, 890 F.2d 210 (9th Cir. 1989) .........................................................14

Estate of Ungar v. Palestinian Auth., 412 F. Supp. 2d 328 (S.D.N.Y. 2006) ..passim

United States v. Danenza, 528 F.2d 390 (2d Cir. 1975)...........................................15

United States v. Lansky, 496 F.3d 1063 (5th Cir. 1974).........................................15

United States v. Thompson, 319 F.2d 665 (2d Cir. 1963)................................15, 16

Zuk v. E. Penn. Psych. Inst., 103 F.3d 294 (3d Cir. 1996).......................................24

## Statutes

28 U.S.C. § 1782...........................................................................................passim

28 U.S.C. § 1783...........................................................................................passim

Walsh Act, 44 Stat. 835, 28 U.S.C. (formerly) §§ 711-718 .....................................15

## Other Congressional Materials

S. Rep. No. 88-1580 (1964), 1964 U.S.C.C.A.N. 3782 .....................................16, 22

## Miscellaneous

Matias F. Travieso-Diaz and Armando A. Musa, Courts of Limited
    Jurisdiction in a Post-Transition Cuba, 39 VANDERBILT J. OF
    TRANSNAT'L L., 125 (January 2006) .............................................................29

The Judicial Code, 8 F.R.D. 439 (1949).................................................................16

Respondent Jack A. Barbanel respectfully moves this Court for an Order vacating this Court's August 14, 2006 *Ex Parte* Order Pursuant To 28 U.S.C. § 1782 and August 18, 2006 *Ex Parte* Order To Serve Subpoena Pursuant To 28 U.S.C. § 1783; quashing the subpoena issued to Jack A. Barbanel; and awarding to Mr. Barbanel the fees and costs incurred in responding to the improper subpoena.

## PRELIMINARY STATEMENT

Through two *ex parte* applications, Oxus Gold plc ("Oxus") sought and obtained orders from the Court under 28 U.S.C. §§ 1782 and 1783 to issue and serve a subpoena on Mr. Barbanel and to haul him from Moscow, Russia to New Jersey for deposition and document production.    But, contrary to the representations to the Court made by Oxus, Mr. Barbanel resides in Moscow, not New Jersey, and the company for which he works, SIG Overseas Limited ("SIG"), which was also issued a subpoena, is a foreign corporation that conducts no business in the United States.  Even more troubling is the misrepresentation that Mr. Barbanel possesses information critical to certain proceedings in foreign tribunals and that production of that information "is necessary in the interest of justice."  In fact, most of the proceedings cited by Oxus are not at a stage where evidence is even being accepted, and, in any event, Mr. Barbanel would have little

information to offer, since he took no part in the critical events that form the basis for the pending overseas claims.

Nor, for that matter, is Oxus's invocation of 28 U.S.C. §§ 1782 and 1783 proper. Section 1783 provides no authority for serving a witness overseas and bringing him to the United States to provide testimony in a foreign proceeding. Nor -- as Oxus apparently concedes -- does Section 1782 authorize service abroad upon a non-resident; moreover, given the lack of relevance and inadmissibility of information that could be provided by Mr. Barbanel with respect to the foreign proceedings, Oxus's reliance on Section 1782 is similarly unsupportable.

For these reasons, and on numerous other substantive and procedural grounds discussed below -- including the fact that *Mr. Barbanel has never been properly served* in conformity with the Hague Convention -- Mr. Barbanel respectfully requests that the Court vacate its orders authorizing the subpoena, quash the subpoena, and award him appropriate costs and fees.

## <u>STATEMENT OF FACTS</u>

### <u>TGMC, the Jerooy Gold Deposit, and the Overseas Proceedings</u>

In 1998, the Talas Gold Mining Company ("TGMC") was created as a joint venture between Oxus's indirect and then partially-owned subsidiary, Norox Mining Company Ltd. ("Norox"), and the State Enterprise Kyrgyzaltyn Joint Stock Company ("KA") for the purpose of developing the Jerooy gold deposit in the

Kyrgyz Republic ("the Republic").  (Declaration of Glenn Kolleeny ("Kolleeny Decl.") ¶¶ 3-4.)  Under the terms of the joint venture agreement, Norox and KA held 66.7% and 33.3% of TGMC, respectively.  (Id. ¶ 4.)  On March 6, 2000, TGMC was granted by the Republic a license ("the License") for the right to use the subsoil at the Jerooy gold deposit.  (Id. ¶ 5.)  The License was suspended by the Kyrgyz State Agency on Geology and Mineral Resources ("the Agency") in 2001, and then annulled by the Agency in 2002, due to TGMC's failure to fulfill its obligations thereunder.  (Id. ¶ 6.)  However, the License was reinstated in 2003 pursuant to TGMC's agreement to proceed with development of the mine along an accelerated time frame.  (Id. ¶ 7.)  Again, however, TGMC failed to meet its obligations under the License, and, on August 3, 2004, the Agency canceled the License for a second time.  (Id. ¶ 8.)  The Republic formally approved this decision by Resolution No. 597 dated August 11, 2004.  (Id.)

In November 2005 -- after all of the events described above -- Mr. Barbanel, managing director of SIG Overseas Limited ("SIG"), a corporate finance and private equity consulting company based outside the United States for which Mr. Barbanel is managing director, approached the Republic on behalf of a client about potentially competing for the license to develop the Jerooy mine. (Declaration of Jack Barbanel ("Barbanel Decl.") ¶¶ 2, 4, 6; Kolleeny Decl. ¶ 10.) At the meeting, the Republic's representatives stated that they had no intention of

reconsidering the decision to annul TGMC's License.  (<u>Id.</u> ¶ 6; Kolleeny Decl. ¶ 11.)  They further stated that the Republic had no obligation to reinstate the License and had obtained independent legal advice to this effect from the London based firm of Davenport Lyons.  (<u>Id.</u>)  Neither Mr. Barbanel nor SIG was involved in the annulment, or the reconsideration process (if any), concerning TGMC's License. (Barbanel Decl. ¶¶ 7, 10.)  Nor did Mr. Barbanel or SIG participate in any action taken by the Republic, or its instrumentalities, related to the annulment. (<u>Id.</u> ¶ 10.)

Pursuant to a request made by the Republic's representatives, Mr. Barbanel met with Oxus on December 1, 2005, to attempt to negotiate the purchase of Norox's interest in the Jerooy project.  (Barbanel Decl. ¶¶ 8-9; Kolleeny Decl. ¶¶ 13-14.)  At that meeting, Oxus refused to discuss a sale of Norox's interest. (Barbanel Decl. ¶ 9; Kolleeny Decl. ¶ 14)  On February 24, 2006, KA terminated the TGMC joint venture. (Kolleeny Decl. ¶ 15.)

In March 2006, TGMC initiated three court proceedings in Kyrgyzstan: an action against the Agency challenging its August 3, 2004 decision to terminate the License; an action against the Republic challenging Government Resolution No. 597, dated August 11, 2004, which approved the Agency's decision; and an action against the Republic challenging the validity of Government Resolution No. 619, dated December 28, 2005, which (through the

State Committee on State Property) instructed KA to look for a new investor. (Declaration of Illarion Stepanovich Adamyan ("Adamyan Decl.") ¶¶ 3, 6, 8; Kolleeny Decl. ¶ 16.)  Oxus is not a party to any of these judicial proceedings. (Kolleeny Decl. ¶ 16.)  After several months of proceedings and various appeals, all of the Republic's acts (and those of the Agency) were upheld on the merits by the courts of first instance, and with respect to the suits challenging the Agency's administrative decision and Governmental Resolution No. 597, upheld on appeal as well.  (Adamyan Decl. ¶¶ 3-7; Kolleeny Decl. ¶ 16.)  TGMC is currently appealing an adverse decision from the court of first instance upholding Government Resolution No. 619.  (Adamyan Decl. ¶ 8.)

Oxus has also recently initiated arbitration proceedings against the Republic pursuant to the United Nations Commission on International Trade Law ("UNCITRAL") rules, claiming that the Republic has, through its actions concerning TGMC, violated the Agreement for the Promotion and Protection of Investment between the United Kingdom and the Republic.  (Kolleeny Decl. ¶¶ 19-20; August 10, 2006 Declaration of Audley William Sheppard ("Sheppard Decl.") Ex. B (filed with this Court on Aug. 11, 2006).)  In addition, the Prime Minister of the Republic has advised TGMC (not Oxus) via letter dated May 18, 2006 of potential compensation claims against TGMC for failing to develop the Jerooy

gold mine. (Sheppard Decl. Ex. C.) The Government, however, has not taken any steps against TGMC.

On May 25, 2006, Global G.o.l.d. Holdings GmbH, the Austrian corporation formed by SIG's client, entered into a joint venture agreement with KA for the development of the Jerooy gold deposit. The Primary First Trade Union Organization of TGMC -- not TGMC itself or Oxus -- thereafter filed a claim in Kyrgyz court on July 6, 2006 requesting invalidation of the resolution by the Republic approving the agreement. (Adamyan Decl. ¶ 9; Sheppard Decl. Ex. A.) That case was not accepted by the court on the grounds of lack of standing of the plaintiff and is no longer pending. (Adamyan Decl. ¶ 9.)

<u>The Subpoena to Mr. Barbanel</u>

On August 11, 2006, Oxus filed an *ex parte* application pursuant to 28 U.S.C. § 1782 to take discovery of Mr. Barbanel and SIG.[1] Section 1782 allows a court to authorize discovery for use in a "proceeding in a foreign or international tribunal" upon application by an "interested person" and a showing that the person from whom the discovery is sought resides or is found in the district in which the

---

[1] SIG was incorrectly identified in the *ex parte* application to the Court. (<u>See</u> Sheppard Decl. ¶ 4.) SIG is not a New Jersey corporation, has neither offices nor a registered agent in New Jersey, and conducts no business in New Jersey. (Barbanel Decl. ¶ 2.) Nor is there any record of service on SIG. Neither Mr. Barbanel nor SIG has any connection with Strategic Investments Group, Inc., which appears to be a New Jersey corporation. (<u>Id.</u> ¶ 3.)

application is made.[2]  See 28 U.S.C. § 1782.  In support of its application, Oxus asserted that the requested discovery was for use in connection with the four claims in the Kyrgyz courts described above, the international arbitration proceeding under UNCITRAL rules, and the notice of compensation claim against TGMC. These actions were described in the Declaration of Audley William Sheppard submitted in support of the application, which further (and incorrectly) asserted that Mr. Barbanel and SIG were "at the center of the controversy that has led to the

---

[2]      28 U.S.C. § 1782 provides, in relevant part:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.  By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. . . .  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

-7-

proceedings discussed in this declaration" and have information "critical" to those proceedings.  (See Sheppard Decl. ¶ 23.)

The application papers filed by Oxus, and in particular, the declaration filed by Mr. Sheppard, contained a number of inaccurate or misleading statements. Of particular relevance, Oxus and Mr. Sheppard stated -- inaccurately -- that Oxus rather than one of its indirect subsidiaries was involved in certain events or proceedings, (see Ex Parte Application for Order to Take Discovery  Pursuant to 28 U.S.C. § 1782 ("Section 1782 Application") ¶ 4; Sheppard Decl. ¶¶ 3, 11); incorrectly stated that TGMC, rather than the trade union, had filed one of the overseas claims upon which Oxus is relying, (see Section 1782 Application ¶¶ 3, 4; Sheppard Decl. ¶¶ 15, 17, 18); failed to disclose that the proceeding filed by the trade union is, in fact, not pending, (see Sheppard Decl. ¶ 17); and incorrectly stated that SIG is "found" in New Jersey, (see Section 1782 Application ¶¶ 5, 21).

Most critically, Mr. Sheppard incorrectly asserted that Mr. Barbanel and SIG were "at the center of the controversy that has led to the proceedings discussed in this declaration" and have information "critical" to those proceedings. (See Sheppard Decl. ¶ 23.)  As noted above, Mr. Barbanel and SIG, in fact, had no involvement in the key events underlying the actions pending overseas and thus do not possess any discoverable information important for use in those proceedings. Indeed, the central event at issue in the pending claims is the termination of

TGMC's License to develop the Jerooy gold mine in August 2004, which occurred well over a year before Mr. Barbanel's involvement in any negotiations with the Republic concerning mining projects in Jerooy. Moreover, as discussed further below, the pending overseas matters with respect to which Mr. Barbanel's testimony is allegedly relevant for the most part have either progressed past, or not reached, a point at which discovery would be theoretically relevant. (See Adamyan Decl. ¶¶ 5, 7, 9.)

Notwithstanding these factors -- which were unknown to the Court given the *ex parte* nature of Oxus's application -- on August 14, 2006, Chief Judge Garrett Brown granted Oxus's application, authorizing service of subpoenas for documents and testimony from Mr. Barbanel and SIG. The document requests to both Mr. Barabanel and SIG sought a broad swath of information pertaining to gold mining operations in the Kyrgyz Republic, as well as documents concerning financing of, and communications with, various entities. (See *Ex Parte* Order Pursuant to 28 U.S.C. § 1782 (August 14, 2006), Ex. A and B.) The request for testimony of Mr. Barbanel was entirely open-ended and did not specify any particular subject for deposition. (See id. Ex. A.) The subpoena to SIG requested testimony on a broad range of issues concerning the involvement of SIG, Mr. Barbanel, the Republic of Kyrgyz, and others in gold mining operations in the Kyrgyz Republic. (See id. Ex. B.)

Purporting to discover only after Chief Judge Brown had issued the *ex parte* order that Mr. Barbanel could not be found in the district, Oxus subsequently applied for an order pursuant to 28 U.S.C. § 1783 to serve Mr. Barbanel in Moscow, Russia and to require him to travel to New Jersey for his deposition.[3]  In submitting its application, Oxus did not advise the Court that Mr. Barbanel resides primarily in Moscow, where he is employed and regularly conducts business.  (See Barbanel Decl. ¶ 1.)[4]  It stated only that Mr. Barbanel was expected to remain in Moscow "at least through the end of this week."  (*Ex Parte* Application for Order to Serve Subpoena Pursuant to 28 U.S.C. § 1783, ¶ 2.)  On August 18, 2006,

---

[3]     28 U.S.C. § 1783 provides, in relevant part:

> (a) A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country, or requiring the production of a specified document or other thing by him, if the court finds that particular testimony or the production of the document or other thing by him is necessary in the interest of justice, and, in other than a criminal action or proceeding, if the court finds, in addition, that it is not possible to obtain his testimony in admissible form without his personal appearance or to obtain the production of the document or other thing in any other manner.

[4]     Mr. Barbanel leases an apartment in Princeton, which he uses when he is in New Jersey to vacation and visit his parents and physician.  (See Barbanel Decl. ¶ 1.)

-10-

Magistrate Judge John Hughes granted the application, authorizing service under Section 1783 and requiring that payment of $7,500 for travel expenses be tendered.

On August 17, 2006 -- one day before entry of the Court's Order authorizing service -- Oxus purported to serve Mr. Barbanel in Moscow by personal delivery rather than by means authorized under the Russian Federation's acceptance of the Hague Convention.  Such service was accomplished by a false representation to Mr. Barbanel's secretary that a deputy to the Minister of Telecommunications and his assistant wished to meet with him at a hotel in central Moscow, where Mr. Barbanel consequently went, only to be met by two persons apparently from the Moscow office of the law firm of Clifford Chance.  (Barbanel Decl. ¶ 11.)

The subpoena purportedly served on Mr. Barbanel requests deposition testimony in New Jersey on August 30, 2006, and production of documents in New Jersey on September 11, 2006.  (Barbanel Decl. ¶ 12, Ex. A.)  However, the actual copy of the subpoena delivered to Mr. Barbanel contained no schedule of documents to be produced.  (Id.)  Nor was the subpoena accompanied by a tender of the travel expenses as ordered by the Court.  (Id. ¶ 14.)[5]

---

[5]    The subpoena was accompanied only by a letter from counsel for Oxus agreeing to pay travel expenses and attendance fees that Mr. Barbanel might incur.  (See Barbanel Decl. ¶ 13, Ex. B.)

On August 28, 2006, counsel for Mr. Barbanel sent a letter to counsel for Oxus setting forth objections to the subpoena on substantive and procedural grounds and requesting that the subpoena be withdrawn. (See Declaration of Douglas S. Eakeley ¶ 2, Ex. A.) Oxus has refused to withdraw the subpoena, thus necessitating the instant application. (See id. ¶ 3.)

## LEGAL ARGUMENT

### POINT I.  MR. BARBANEL WAS NOT PROPERLY SERVED.

### A.    Oxus Did Not Comply With the Hague Convention On Service.

Under Fed. R. Civ. P. 4(f), which governs service overseas under 28 U.S.C. §§ 1782 and 1783, service must be accomplished in a manner that comports with the provisions of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters ("Hague Convention"), Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. See Fed. R. Civ. P. 4(f) (service should be effected "by an internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention . . . ."). Compliance with the Hague Convention is mandatory where a country, like the Russian Federation, is a signatory to the convention. See, e.g., Shenouda v. Mehanna, 203 F.R.D. 166, 170 (D.N.J. 2001).

Here, Mr. Barbanel was purportedly served through personal delivery. But the Russian Federation, in signing the Hague Convention, specifically stated that it was not agreeing to permit service by the means listed in Article 10 of the

Hague Convention, the provision allowing personal service by "judicial officers, officials or other competent persons." <u>See</u> Hague Convention, art. 10; Reservation Declarations of the Russian Federation, art. VI, May 1, 2005 ("Service of documents by methods listed in Article 10 of the Convention is not permitted in the Russian Federation.").[6] Rather, service by a competent authority designated by the Russian Federation is required for the subpoena at issue. <u>See</u> Hague Convention, art. 2 ("Each Contracting Agency which will undertake to receive requests for service coming from other Contracting States . . . ."); Reservation Declarations of the Russian Federation, art. I ("The Ministry of Justice of the Russian Federation is designated as the Central Authority for the purposes of Article 2 of the Convention."); <u>see also</u> <u>Shenouda</u>, 203 F.R.D. at 171 (service under Article 10 not permissible where Eygpt had objected to Article 10 in its entirety). The purported personal service on Mr. Barbanel in Moscow by Oxus's counsel undoubtedly failed to comply with the Hague Convention.

## B.   <u>Oxus Did Not Tender the Required Fees.</u>

Pursuant to Judge Hughes's order of August 18, 2006, Oxus was specifically directed to provide Mr. Barabanel with payment for travel expenses and fees in the amount of $7,500. However, no such fees were included with the subpoena purportedly served on Mr. Barbanel; only an "undertaking" to pay such

---

[6]   This document is available at
      http://www.hcch.net/index_en.php?act=status.comment&csid=418&disp=resdn.

fees in the future was provided.  The subpoena thus failed to comply with the Court's order, as well as Rule 45's requirement that witness fees be tendered at the time of service.  See, e.g., In re Dennis, 330 F.3d 696, 704-05 (5th Cir. 2003); Tedder v. Odel, 890 F.2d 210, 211 (9th Cir. 1989); Badman v. Stark, 139 F.R.D. 601, 604 (M.D. Pa. 1991); see also Klockner Namasco Holdings Corp. v. Daily Access.com, Inc., 211 F.R.D. 685, 687 (N.D. Ga. 2002) (holding that party that issues deposition subpoena without tendering fees assumes risk that witness will not appear and is not entitled to sanctions when that occurs, despite subsequent tender of fees).  For this reason as well, the subpoena purportedly served is unenforceable.

## POINT II.  THE SUBPOENA IS NOT AUTHORIZED BY 28 U.S.C. § 1783.

### A.  28 U.S.C. § 1783 Is Inapplicable.

In seeking authorization from the Court to serve a subpoena on Mr. Barbanel in Moscow, Russia, Oxus relied on 28 U.S.C. § 1783, which allows issuance of a subpoena abroad where necessary in the interests of justice and upon a finding that particular testimony or documents cannot otherwise be obtained. But, contrary to the situation presented here, Section 1783 has only previously been invoked *in connection with proceedings pending in the United States*.  See, e.g., Estate of Ungar v. Palestinian Auth., 412 F. Supp. 2d 328 (S.D.N.Y. 2006) (seeking to enforce domestic default judgment); Klesch & Co. Ltd. v. Liberty

-14-

Media Corp., 217 F.R.D. 517 (D. Colo. 2003) (seeking to compel document production in domestic business tort litigation); see also United States v. Thompson, 319 F.2d 665, 669 (2d Cir. 1963) (holding that 28 U.S.C. § 1783 did not authorize federal district courts to issue subpoenas requiring United States citizen residing in foreign country to appear before grand jury because it is not a "criminal proceeding" within the Walsh Act). We are aware of no case in which a court has ordered issuance of a subpoena under Section 1783 where, as here, there was no proceeding pending in the United States but only proceedings taking place in foreign jurisdictions.[7]  Oxus has cited no case in support of its attempt to use Section 1783 to serve a subpoena issued under 28 U.S.C. § 1782, which concerns orders for discovery for use in foreign tribunals.

The legislative history of Section 1783 confirms that it is applicable only in connection with cases or proceedings pending in the United States, not foreign tribunals. The statute upon which Section 1783 is based, the Walsh Act, 44 Stat. 835, 28 U.S.C. (formerly) §§ 711-718, was enacted in 1926 specifically to enable the United States Government to require two United States citizens who were in Europe to return to the United States to testify as material witnesses in the

_____

[7]    Indeed, the Southern District of New York recently noted with surprise the dearth of case law involving the issuance of subpoenas pursuant to Section 1783. Estate of Ungar, 412 F. Supp. 2d at 333.  The handful of other cases invoking Section 1783 involve proceedings in the United States.  See Blackmer v. United States, 284 U.S. 421 (1932); United States v. Danenza, 528 F.2d 390 (2d Cir. 1975); United States v. Lansky, 496 F.3d 1063 (5th Cir. 1974).

trial of actions arising out of the Teapot Dome scandals.  <u>Thompson</u>, 319 F.2d at 669.   The Act was an eleventh hour enactment, "without a committee hearing, under suspension of rules, and without an opportunity for debate."   <u>Id.</u>   The statute's plain purpose was to allow a court to compel the appearance of United States citizens abroad as witnesses at the "trial of any criminal action" in the United States.   In the 1948 revision and codification of the Judicial Code, the Walsh Act was redrafted substantially in its present form, clarifying the statute's application to any "criminal proceeding."  <u>See</u> <u>generally</u> William W. Barron, <u>The Judicial Code</u>, 8 F.R.D. 439 (1949).  The revisions in 1964 extended the statute to include civil proceedings as well, where "necessary in the interest of justice," and to allow subpoenas to issue "requiring the production of a specified document or other thing."  28 U.S.C. § 1783(a); 1964 U.S.C.C.A.N. at 3790.  This incremental extension, from criminal to civil matters and from testimony to physical evidence, however, did not seek to encompass discovery for use in foreign proceedings.

In short, Oxus's application here seeks an unprecedented expansion of Section 1783, requiring a United States citizen abroad to travel thousands of miles to the United States for the sole purpose of providing testimony for use in an overseas proceeding thousands of miles away.  Congress could not have intended such a reading.  Nor does the Constitution authorize it.

**B.** **The Requirements of 28 U.S.C. § 1783 Have Not Been Met.**

Not only is Section 1783 inapplicable, but in numerous respects both Oxus's application and the Court's order of August 18, 2006 fail to meet the statutory requirements. To begin with, the Court's August 18, 2006 order does not contain the required finding that "it is not possible to obtain [the witness's] testimony in admissible form without his personal appearance or to obtain the production of the document or other thing in any other manner." In fact, Oxus has made no showing that alternate means of obtaining the requested information (*e.g.*, deposition on written questions under Fed. R. Civ. P. 31, or reliance on overseas judicial process) would be inadequate.

Nor, for that matter, has Oxus met the required showing that the testimony and documents sought are "necessary in the interest of justice." 28 U.S.C. § 1783. As discussed further in Point III.B. below, no proceeding would be aided by the production of the information sought by the subpoena, which is not even relevant. See Estate of Ungar, 412 F. Supp. at 334 (Section 1783 subpoena may be issued only when there is a "compelling reason.").

In addition, the broad nature of the document requests in the subpoena fails to comport with the provision in Section 1783 limiting production to a "specified document or thing." 28 U.S.C. § 1783(a). Likewise, the uncircumscribed subpoena for testimony from Mr. Barbanel is inconsistent with

-17-

the statutory language allowing a subpoena only for "*particular* testimony."  Id.
(emphasis added).

　　　　Furthermore, the Court's authorization for issuance of the document
subpoena to Mr. Barbanel was in error, as its decision was based on the incorrect
information that SIG is subject to the Court's jurisdiction.  Even where a court has
personal jurisdiction over a United States citizen residing in a foreign country, that
citizen cannot be compelled to produce corporate documents of a corporation over
which the court lacks personal jurisdiction.  See Estate of Ungar, 412 F. Supp. 2d
at 332 (noting that even where Court had personal jurisdiction over chairman of
foreign telecommunications company, an absent United States citizen, in suit
pending in the United States, chairman could not be compelled to produce
requested corporate documents because Court lacked personal jurisdiction over
foreign corporation); In re Sealed Case, 832 F.2d 1268, 1272-73 (D.C. Cir. 1987)
(party seeking production of corporate documents must show that court has
personal jurisdiction over that company in order to secure valid order directing
production).

　　　　Finally, Oxus improperly obtained the August 18, 2006 order under
Section 1783 through an *ex parte* application.  Although Local Civil Rule 27.1
authorizes an *ex parte* application for an order seeking the deposition of a "person
who resides or may be found in the District" -- in other words, for an order

pursuant to 28 U.S.C. § 1782 -- it makes no such authorization for an *ex parte* application pursuant to Section 1783, which concerns a "national or resident of the United States who is in a foreign country," 28 U.S.C. § 1783. Oxus knew that Mr. Barbanel was represented by counsel (the Salans firm) and knew that its counsel had been in communications with counsel for Oxus, and thus should have provided appropriate notice to Mr. Barbanel, allowing him to oppose the application and challenge the numerous factual inaccuracies in Oxus's application. See Fed. R. Civ. P. 5 (a) (requiring service on all parties of "every written motion other than one which may be heard *ex parte*"). Oxus's failure to allow Mr. Barbanel an opportunity to contest the application, like the numerous other deficiencies under 28 U.S.C. § 1783, requires quashing of the subpoena and vacatur of the Court's August 18, 2006 order.

## POINT III. THE SUBPOENA IS NOT AUTHORIZED BY 28 U.S.C. § 1782.

Given the inapplicability of 28 U.S.C. § 1783, Oxus lacks any colorable claim that the subpoena purportedly served on Mr. Barbanel in Moscow is valid. Indeed, Oxus's application for service under Section 1783 after Chief Judge Brown had entered the August 14, 2006 Order pursuant to 28 U.S.C.§ 1782 is a tacit concession that Section 1782 does not authorize service of the subpoena outside the United States. Moreover, without recourse to Section 1783, Oxus lacks any argument whatsoever that the Court has authority to require Mr. Barbanel to

travel more than 100 miles for deposition, much less from halfway around the world.  See Fed. R. Civ. P. 45(c)(3)(A)(iv).  But, in any event, to the extent Oxus continues to rely on 28 U.S.C. § 1782 for issuance of the subpoena, it is plain that such reliance is misplaced.

Section 1782 authorizes a court to require a person to provide testimony or produce documents where (1) the person from whom discovery is sought "resides or is found" in the district of the district court to which the application is made; (2) the discovery is "for use in a proceeding in a foreign or international tribunal;" and (3) the application is made by a foreign or international tribunal or any "interested person" with respect to that tribunal.  See 28 U.S.C. § 1782(a).  Even when these requirements have been met, however, whether to grant such a discovery application is a matter for the Court's discretion.  See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004).  As the Third Circuit has explained, "'[t]he permissive language of section 1782 vests district courts with discretion to grant, limit, or deny discovery.'"  Bayer AG v. Betachem, 173 F.3d 188, 191 (3d Cir. 1999) (quoting In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery, 121 F.3d 77, 79 (2d Cir. 1997)).  In Intel, the Supreme Court identified certain factors that "bear consideration" in ruling on a Section 1782 request:  (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature

of the foreign tribunal, the character of the proceedings under way, and the receptivity of the foreign government or court to U.S. federal court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of the foreign country; and (4) whether the request is unduly intrusive or burdensome.  <u>See</u> 542 U.S. at 264-65.

Here, Oxus's application neither satisfies the three required elements under Section 1782, nor warrants exercise of the Court's discretion in its favor. Rather, an analysis under Section 1782 leaves little doubt but that the subpoena should be quashed.

## A.   Oxus's Application Does Not Satisfy the "Residence" Requirement of 28 U.S.C. § 1782.

The first threshold requirement of Section 1782 is a showing that the person from whom discovery is sought resides or is found in the district.  As noted above, Mr. Barbanel maintains his primary residence in Moscow, Russia, where he is employed and regularly conducts business.  (<u>See</u> Barbanel Decl. ¶ 1.)  He does not reside in New Jersey.  (<u>See</u> <u>id.</u>)  When visiting New Jersey to vacation and to visit with his elderly parents and physician, for a total of two months out of every year, he stays in a property that he rents.  This limited contact with New Jersey does not satisfy the "reside[nce]" requirement of Section 1782.  <u>See</u> <u>In re Microsoft Corp.</u>, 428 F. Supp. 2d 188, 193 (S.D.N.Y. 2006) (partner in New York law firm and member of New York bar who resides in, and works full time in,

Brussels does not "reside" in Southern District of New York for purposes of Section 1782); In re Kolomoisky, No. M19-116, 2006 WL 2404332, at *3 (S.D.N.Y. Aug. 18, 2006) (petitioner's presence in United States for ten to twelve days earlier in the year, and fact that wife and son reside in apartment in Manhattan, insufficient to conclude that petitioner resides in Southern District of New York for purposes of Section 1782).

But even if the Court could obtain jurisdiction over Mr. Barbanel for purposes of Section 1782, Oxus would still not be authorized to obtain documents in Mr. Barbanel's custody located overseas.  In Norex Petroleum Ltd. v. Chubb Insurance Co. of Canada, 384 F. Supp. 2d 45 (D.D.C. 2005), the district court refused to allow a party engaged in foreign litigation to obtain documents from a domestic non-party where the documents were held in a foreign country by the non-party's foreign parent corporation.  The court observed that it had "found no case in which § 1782 has been used to permit the extraterritorial application of § 1782," and that the body of case law it had reviewed "suggests that § 1782 is not properly used to seek documents held outside the United States as a general matter."  See id. at 52-53; see also In re Application of Sarrio, S.A., 119 F.3d 143, 147 (2d Cir. 1997) ("[D]espite the statute's unrestrictive language, there is reason to think that Congress intended to reach only evidence located within the United States."); S. Rep. No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3788

(report asserting that the amendments providing for documentary discovery under the statute were intended to aid "in obtaining oral and documentary evidence *in the United States*" (emphasis added)).  Any attempt by Oxus to use Section 1782 to obtain documents from Mr. Barbanel located abroad is therefore improper.

**B.      The Discovery Is Not "For Use" In A "Proceeding In A Foreign Or International Tribunal."**

   **1.     *The Information Sought By The Subpoena Is Not Relevant To, Much Less Admissible In, The Foreign Proceedings.***

The second threshold requirement under Section 1782 is that the discovery sought be "for use" in a "proceeding in a foreign or international tribunal."  But, although Oxus claims the subpoena is needed to obtain information "for use" in particular pending overseas proceedings, in fact, the subpoena does not even seek information both relevant to and admissible in those proceedings.  See Intel, 542 U.S. at 262 ("§ 1782(a)'s objective [is] to assist foreign tribunals in obtaining *relevant* information that the tribunals may find useful." (emphasis added)).  Rather, the subpoena is clearly no more than a fishing expedition by Oxus for some undisclosed purpose.  In re Imanagement Servs., Ltd., No. Misc. 05-89 (FB), 2005 WL 1959702, at *5 n.6 (E.D.N.Y. Aug. 16, 2005) ("The Court recognizes that it should reject a § 1782 request if it suspects that it is a 'fishing expedition' or a vehicle for harassment."); Smoothline Ltd. v. North Am. Foreign Trading Corp., No. 00 CIV 2798 DLC, 84256, 2000 WL 1015949, at *6 (S.D.N.Y.

-23-

July 24, 2000), rev'd on other grounds, 249 F3d. 147 (2d Cir. 2001) (denying without prejudice petition to compel discovery under Section 1782 where discovery requests were "more indicative of a 'fishing expedition' than of a reasonably tailored request for documents relevant to any legitimate dispute.").

It is well-settled that American courts cannot grant a plenary license to fish in some undisclosed pond for some unidentified fish, yet Oxus's subpoena and document request seek to do just that. See, e.g., Jones v. SEC, 298 U.S. 1, 26 (1936) ("[A] citizen, when interrogated about his affairs, has a right before answering to know why the inquiry is made, and if the purpose disclosed is not a legitimate one, he may not be compelled to answer."); Ellis v. ICC, 237 U.S. 434, 445 (1915) (noting pursuit of an inquiry based upon no specific ground must be viewed as an impermissible "fishing expedition . . . for the chance that something [useful] might turn up"); Zuk v. E. Penn. Psych. Inst., 103 F.3d 294, 299 (3d Cir. 1996) ("[D]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it."). And where a non-resident is concerned, the Supreme Court has particularly admonished courts to "exercise special vigilance to protect foreign litigants" from the exigencies of "unnecessary or unduly burdensome discovery." Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct., 482 U.S. 522, 546

(1987) ("Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests.").

As discussed above, the proceedings in the Kyrgyz courts filed by TGMC (all of which TGMC lost in the courts of first instance) primarily concern events that significantly predate Mr. Barbanel's involvement with mining in Jerooy in November 2005 -- in particular, the termination of TGMC's license in 2004. Mr. Barbanel had no role in the annulment of the license or in the Republic's refusal to reconsider that decision. (Barbanel Decl. ¶¶ 7, 10.) Indeed, the fact that TGMC did not seek Mr. Barbanel's documents or testimony when the cases were pending at the trial level, and, in two instances, the appellate level as well, speaks volumes about the lack of necessity for his testimony and relevance of the information.

Not only is the information sought not relevant; it would not even be admissible in two of the three Kyrgyz court proceedings. In the Kyrgyz Supreme Court, which would hear any further appeal of the decisions in the first two cases, new evidence that was not before the court of first instance is not accepted. (See Adamyan Decl. ¶¶ 4, 6.) Thus, the evidence sought by Oxus -- which TGMC never sought to obtain below -- cannot be "for use" in connection with those cases. See In re Application of Euromepa, 154 F.3d 24, 29 (2d Cir.1998) ("[T]he discovery certainly could not be 'for use in' the French Supreme Court appeal if

that court does not take and hear new evidence."); In re Imanagement Servs., 2005 WL 1959702, at *2 ("When a foreign evidentiary proceeding has concluded and the foreign tribunal will no longer accept any evidence, the discovery sought cannot be 'for use' in the foreign proceeding."); see also In re Application of Ishihara Chemical Co., Ltd., 251 F.3d 120, 125 (2d Cir.2001) abrogated on other grounds in Intel, 542 U.S. at 259.[8]

The desired discovery is no more "for use" in the other actions referenced in Oxus's motion. Under UNCITRAL rules, only the tribunal itself (not the parties) is authorized to seek information, and only from the parties, not third parties. See UNCITRAL Arbitration Rules, Art. 24(3) (1976) ("At any time during

---

[8]     In John Deere Ltd. v. Sperry Corporation, 754 F.2d 132, 133 (3d Cir. 1985), the Third Circuit held that 28 U.S.C. § 1782(a) did not "require[] a district court to consider . . . the ultimate admissibility of evidence in the foreign jurisdiction prior to granting a discovery order requested by a foreign litigant." But the district court's order in that case concerned admissibility of evidence at trial under the Canadian rules of evidence, see John Deere Ltd. v. Sperry Corp., 100 F.R.D. 712, 714 (E.D. Pa. 1983), a question of foreign law the Third Circuit wished the district court to avoid, see 754 F.2d at 136. Here, there is no open technical question about the admissibility of particular evidence; the trials have already passed. As a matter of law, *no* new evidence (from any source) is permitted at proceedings on appeal in the Krygyz Supreme Court. (See Adamyan Decl. ¶¶ 4, 6.). The Third Circuit's reasoning in John Deere is thus inapplicable. See In re Imanagement Servs., 2005 WL 1959702, at *2 (noting that "for use" requirement in Section 1782 requires court to consider whether "*any* evidence" would be accepted by the tribunal, but not whether particular pieces of evidence would be admissible, which would be difficult for district court to predict.). In any event, pursuant to Intel, and consistent with the district court cases following Intel cited in Point III.D. below, the admissibility of the evidence sought is at least a consideration under the discretionary analysis under Section 1782.

the arbitral proceedings, the *arbitral tribunal* may require *the parties* to produce documents, exhibits, or other evidence." (emphases added)).[9]  The suggestion that Oxus requires information from Mr. Barbanel for use in the UNCITRAL arbitration is therefore without basis.  With respect to the purported action by the Republic seeking compensation from TGMC relating to its failure to develop the Jerooy mine, no such claim has actually been filed.  The Republic has merely sent a single letter to TGMC advising of a possible claim.  (See Sheppard Decl. Ex. C.) Moreover, Oxus has made no proffer as to why Mr. Barbanel would even have relevant evidence to offer with respect to the issues on any such claim.  The notion that the discovery sought is relevant to, and will be admissible in, or even reasonably contemplated by, any action for compensation is thus not only far-fetched but premature, at best.  See Intel, 542 U.S. at 259 (foreign proceedings must be "within reasonable contemplation."); In re Letter of Request from Crown Prosecution Serv. of United Kingdom, 870 F.2d 686, 692 (D.C. Cir. 1989) (R. B. Ginsburg, J.) ("[T]o guard against abuse of section 1782, the district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time.").

---

[9]     This document is available at
        http://www.jus.uio.no/lm/un.arbitration.rules.1976/24.html.

-27-

**2.**     *Section 1782 Does Not Apply to International Arbitration.*

Even if the information sought by Oxus were somehow relevant or admissible, Oxus cannot invoke Section 1782 with respect to the arbitration under UNCITRAL rules.  As the Fifth Circuit has noted, "not every conceivable fact-finding or adjudicative body is covered [by Section 1782]."  Republic of Kazakhstan v. Biedermann Int'l, 168 F.3d 880, 882 (5th Cir. 1999).  In particular, Section 1782 does not apply to an *ad hoc* arbitration between a private company and a State, such as the one between Oxus and the Republic.  See id. at 882-83; Nat'l Broad. Co., Inc. v. Bear Stearns & Co., Inc., 165 F.3d 184, 187-189 (2d Cir. 1999) (holding that Section 1782 does not apply to proceedings before private arbitration panels).  Thus, Section 1782 provides no support for issuing a subpoena to gather information for use in the UNCITRAL arbitration -- undermining one of Oxus's purported bases for seeking the discovery at issue.

In its *ex parte* application seeking discovery with respect to the UNCITRAL arbitration, Oxus cited In re Application of Imanagement Servs. Ltd., Civ. Action No. 05-2311 (JAG), 2006 U.S. Dist. LEXIS 8876 (D.N.J. Feb. 28, 2006), for the proposition that "discovery [is] authorized under § 1782 for use in connection with a foreign arbitration proceeding."  But, as is clear from the opinion in a related case, Imanagement involved an action for fraud in the Moscow City Arbitrazh Court in Russia -- a court, not an arbitration tribunal.  See In re

Imanagement Servs., Ltd., No. Misc. 05-89 (FB), 2005 WL 1959702, at *1 n.1 (E.D.N.Y. Aug. 16, 2005) ("[T]he Moscow City Arbitrazh Court . . . is a Russian state court vested with jurisdiction over commercial disputes."); see also Matias F. Travieso-Diaz and Armando A. Musa, Courts of Limited Jurisdiction in a Post-Transition Cuba, 39 VANDERBILT J. OF TRANSNAT'L L., 125, 139 & n.7 (January 2006) ("Arbitrazh courts are part of the judicial system.").[10]   The Imanagement ruling in the District of New Jersey thus provides no authority for the proposition that Section 1782 may be used to obtain information for the UNCITRAL arbitration.[11]

### C.   Oxus Is Not An "Interested Person" In the Actions Currently Pending in the Kyrgyz Courts.

The final threshold requirement of 28 U.S.C. § 1782 is application for an order by an "interested person" with respect to proceedings in a foreign or international tribunal.   Here, Oxus itself is not even a party to any of the

---

[10]   In Intel, the Supreme Court noted that Congress introduced the word "tribunal" into the statute to "'ensure that 'assistance is not confined to proceedings before the conventional courts,' but extends also to 'administrative and quasi-judicial proceedings.'"   542 U.S. at 249 (quoting S. Rep. No. 88-1580 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3788).

[11]   In its discussion in Intel of the legislative history of Section 1782, the Supreme Court cited to a secondary source from 1965 (one year after the enactment of the current version of Section 1782) that, in turn, identified "arbitral tribunals" as among the bodies which fall within the term "tribunal." See 542 U.S. at 258.   This single reference, which hardly even qualifies as dicta, at most refers to authorization of discovery sought by the arbitral panel itself, not by the parties to an arbitration.

-29-

proceedings in the Kyrgyz courts.  Three of the actions were brought by Oxus's indirect subsidiary, TGMC, and the fourth, which was not accepted by the court on the grounds of lack of standing, was brought by an entirely unrelated trade union. (See Adamyan Decl. ¶¶ 3, 6, 8, 9.)

Although the Supreme Court in Intel concluded that the term "interested person" is not limited to litigants and that the entity seeking discovery in that case, Advanced Micro Devices, Inc. ("AMD"), satisfied the statutory standard, in that case AMD had a right to submit information for the foreign tribunal's consideration and could proceed to court if the tribunal discontinued its investigation or dismissed the complaint.  See 542 U.S. at 256.  Here, Oxus has made no proffer that it would be in a position to submit the information it seeks to any "foreign tribunal" within the meaning of the statute, or to file follow-on actions in court.  It is thus, at best, questionable whether Oxus may even invoke 28 U.S.C. § 1782.

**D.     Relevant Factors Weigh Against Exercise of the Court's Discretion to Authorize Discovery.**

Even if Oxus had satisfied the threshold requirements of Section 1782 -- which it has not -- relevant factors nevertheless weigh heavily against requiring production of testimony or documents by Mr. Barbanel.  The Court should not exercise its discretion to require discovery under Section 1782 in response to Oxus's application.

As noted by the Supreme Court in Intel, principal considerations to be assessed by the court in deciding whether to exercise its discretion are the "nature of the foreign tribunal, the character of the proceedings under way abroad, and the receptivity of the foreign government or court to U.S. federal court judicial assistance." See Intel, 542 U.S. at 264. In particular, the court may consider the admissibility of evidence in the foreign proceeding and whether the evidence would be discoverable in the foreign jurisdiction. See, e.g., In re Imanagement Servs., Ltd., No. Misc. 05-89 (FB), 2005 WL 1959702, at *3; In re Application of Grupo Qumma, S.A., No. M 8-85, 2005 WL 937486, at *2 (S.D.N.Y. Apr. 22, 2005).

Here, as discussed above, the information sought by the subpoena is not in any way relevant to the foreign proceedings. Indeed, TGMC never even sought Mr. Barbanel's testimony or documents while any of the proceedings were pending at the trial level.[12] Nor would the information Oxus seeks be admissible in the Kyrgyz Supreme Court, which would decide any further appeal in two of the three cases. (See Adamyan Decl. ¶¶ 4, 6.) With respect to the arbitration under UNCITRAL rules, under the applicable rules discovery of third parties is not

---

[12]   TGMC's failure to seek such testimony or documents not only evidences the lack of relevance of the information but also suggests a harassing or improper motive behind the present Section 1782 request. See In re Imanagement Servs., Ltd., 2005 WL 1959702, at *5 n.6 (court "should reject a § 1782 request if it suspects that it is . . . a vehicle for harassment").

permitted, nor is discovery conducted by the parties themselves. And, of course, contrary to Oxus's suggestions, no claim for compensation against TGMC has even been filed. The proceedings cited by Oxus thus provide no basis for the Court to exercise its discretion in favor of Oxus and expose Mr. Barbanel to the fishing expedition Oxus seeks to undertake. See Smoothline Ltd. v. N. Am. Foreign Trading Corp., No. 00 CIV 2798 DLC, 84256, 2000 WL 1015949, at *6 (S.D.N.Y. July 24, 2000), rev'd on other grounds, 249 F3d. 147 (2d Cir. 2001).

In addition, it is plain that the requests for documents and testimony of Mr. Barbanel are "unduly intrusive and burdensome" -- another principal consideration noted by the Supreme Court in Intel. See 542 U.S. at 265. As an initial matter, the subpoena seeks to require Mr. Barbanel to travel halfway across the globe from his home in Moscow to attend a deposition in Trenton. Under Fed. R. Civ. P. 45(c)(3)(A)(iv), a person is not required to travel more than 100 miles to the place of deposition; Section 1782, which incorporates the proof-taking methods of the Federal Rules of Civil Procedure, see Intel, 542 U.S. at 260 n.11, neither contemplates nor permits requiring witnesses to undertake intercontinental journeys of thousands of miles. For this reason alone, the subpoena for deposition should be quashed.

Furthermore, compliance with the broad-based document requests seeking, for example, all documents pertaining to gold mining in the Kygryz

Republic, and documents pertaining to financing of, and communications with, various entities involved in mining activities in the Republic, would require substantial time and expense. (See *Ex Parte* Order Pursuant to 28 U.S.C. § 1782 (August 14, 2006), Ex. A (schedule to subpoena).) These document requests are in no way tailored to any specific subject matters, much less the particular issues germane to the pending overseas actions. Failure to narrowly tailor a document request issued to a non-party witness to precise claims and that would include documents that are irrelevant to such claims renders the request overbroad, and as such, constitutes an "undue burden." Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 51 (S.D.N.Y. 1996). Given that the evidence sought by Oxus would not be admissible in any event, the "undue" nature of the burden imposed by subpoena is patent.

Finally, the subpoena to Mr. Barbanel is intrusive. Due to its breadth and arbitrariness, the subpoena will likely sweep in documents or information protected by the attorney-client privilege or work product doctrine (which are not properly discoverable under Section 1782), as well as confidential or commercial information. A non-party such as Mr. Barbanel should not be subjected to such invasive requests for disclosure.

At bottom, Oxus's application -- which seeks to require a non-party resident of Moscow to travel thousands of miles to the United States to provide

irrelevant and inadmissible testimony and documents on a broad array of subjects, at substantial time, cost, and risk to the disclosure of confidential information -- provides no basis for this Court to exercise its discretion under Section 1782. To the contrary, Oxus's fishing expedition presents precisely the type of vexatious and abusive request that the Court must guard against. See In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery, 121 F.3d 77, 79 (2d Cir. 1997) (noting that district court may deny "vexatious[]" request under Section 1782); In re Letter of Request from Crown Prosecution Serv. of United Kingdom, 870 F.2d 686, 692 (D.C. Cir. 1989) (R. B. Ginsburg, J.) (district court should "guard against abuse of section 1782").

## POINT IV. OXUS SHOULD PAY MR. BARBANEL'S ATTORNEYS' FEES AND COSTS INCURRED IN QUASHING THIS IMPROPERLY-OBTAINED SUBPOENA.

Where a subpoena is improperly issued to a non-party and the issuing party refuses to withdraw it, thereby requiring the non-party to institute a motion to quash, imposition of sanctions and award of attorney fees may be warranted. See Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03 Civ. 1382 RWS, 2003 WL 23018833, at *8-*9 (S.D.N.Y. Dec. 23, 2003) (imposing sanctions and awarding fees and costs where party subpoenaed non-party seeking testimony to be used in different proceeding); Am. Int'l Life Assurance Co. v. Vazquez, No. 02 Civ. 141 (HB), 2003 WL 548736, at *2-*3 (S.D.N.Y. Feb. 25, 2003) (imposing sanctions

and awarding fees and costs where subpoena was too sweeping, manner of service was inappropriate, and document request was "patently unreasonable"). In this instance, despite all of the objections raised herein that demonstrate the impropriety of the requested discovery, Oxus refused to withdraw the subpoena, and thus the considerable expense Mr. Barbanel incurred in litigating the issue should be borne by Oxus.

## CONCLUSION

For all of the foregoing reasons, Respondent Jack A. Barbanel respectfully requests that this Court grant his motion and enter an Order vacating the Court's August 14 and 18 Orders, quashing the subpoena, and requiring Oxus to pay Mr. Barbanel's attorneys' fees and expenses incurred in filing this motion to quash.

Respectfully submitted,
LOWENSTEIN SANDLER PC
Attorneys for Respondent
Jack A. Barbanel

By: _____
Douglas S. Eakeley

DATED:  September 5, 2006

-35-