**C L I F F O R D**
**C H A N C E**

CLIFFORD CHANCE US LLP

THE WILLIAM P ROGERS BUILDING
2001 K STREET NW
WASHINGTON DC 20006 1001

TEL +1 202 912 5000
FAX +1 202 912 6000
www.cliffordchance.com

Jon R. Roellke
Partner

DIRECT TEL +1 202 912 5127
DIRECT FAX +1 202 912 6000
jon.roellke@cliffordchance.com

October 3, 2006

**VIA ELECTRONIC FILING AND FEDERAL EXPRESS**

Honorable John J. Hughes, U.S.M.J.
U.S. District Court, District of New Jersey
Clarkson S. Fisher Federal Building & U.S. Courthouse, Room 6000
402 East State Street
Trenton, New Jersey 08608

Re:   In re Oxus Gold plc 28 U.S.C. § 1782 Application (D.N.J. Misc. 06-82)(Oral Argument Scheduled for October 5, 2006)

Dear Judge Hughes:

Along with our co-counsel, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, this Firm represents Oxus Gold plc ("Oxus") in connection with the above-referenced matter. Our Firms jointly request that the Court consider the following points as a brief surreply to the Reply Memorandum submitted by respondent Jack A. Barbanel ("Barbanel") in support of his motion to quash (which is presently set for oral argument on Thursday, October 5). We respectfully submit this short surreply only because, in his reply brief, Barbanel has raised entirely new arguments and asserted a whole set of different facts upon which he bases his contentions, and because we believe it may be more efficient for the Court to have the benefit of Oxus' position on these new matters prior to the October 5, 2006 oral argument. We limit this submission to those newly-raised matters.[1]

1.   **The 1935 Exchange of Diplomatic Notes Does Not Apply.** On the issue of service, Barbanel now concedes that his initial contention that service should have been effected through the Russian Central Authority as required under the Hague Service Convention is

---

[1] There is ample authority for this Court to simply disregard the new facts and legal arguments set forth in Barbanel's reply as a matter of law. See, e.g., Bayer AG v. Schein Pharmaceutical, 129 F.Supp.2d 705, 716 (D.N.J. 2001) (striking portions of the reply brief that raised new arguments), aff'd. 301 F.3d 1306 (3d Cir. 2002); Horizon Healthcare Services, Inc. v. Allied Nat., Inc., 2006 WL 344277 (D.N.J.) (arguments not raised in opening brief are waived); Fellenz v. Lombard Inv. Corp., 400 F.Supp.2d 681, 683-684 (D.N.J. 2005) (declining to address new arguments raised in a reply brief); M.D. On-Line, Inc. v. WebMD Corp., 2005 WL 2469668 (D.N.J. 2005) (disregarding evidence submitted with reply brief). However, should the Court consider any such new material, we request that it take this letter into account as well. See Bowers v. NCAA, 118 F.Supp.2d 494, 534 (D.N.J. 2000) (allowing for a surreply to be filed).

**C L I F F O R D**
**C H A N C E**

CLIFFORD CHANCE US LLP

Honorable John J. Hughes
October 3, 2006

Page 2

wrong. In its place, he asserts a new, but equally flawed argument based on the purported existence of a 1935 "treaty." This argument is flat wrong for any one of the several following reasons.

First, the 1935 "treaty" to which Barbanel refers is the 1935 Exchange of Diplomatic Notes ("1935 Notes") with the former Soviet Union that the United States government now declines to acknowledge. *See Forum Financial Group, LLC v. President and Fellows of Harvard College*, 173 F. Supp. 2d 22, 24 n.4 (D. Me. 2001) (noting the United States' position that "[a]t present, no bilateral agreement on judicial assistance exists between Russia and the United States.")

Second, even if the 1935 Notes are technically still "on the books," the record is clear that the Russian Federation is not abiding their terms or applying them with respect to documents emanating from the United States. (*See* LaForge Declaration, Exh. 2, Letter from U.S. Department of Justice confirming that the Russian Federation is not honoring requests for service or letters rogatory from U.S. courts; *see also*, Declaration of Nikolai Georgievich Eliseev ("Eliseev Declaration") ¶ ¶¶ 5-9, attached hereto as Exhibit A). Barbanel, in essence, claims that Oxus should have effected service under the terms of a diplomatic exchange that not even the diplomats themselves are adhering to.

Third, even if the 1935 Notes were currently in use (which plainly they are not), they do not apply at all with respect to the service of a subpoena issued by a United States court that commands the appearance of a U.S. citizen for a deposition in the United States. Instead, the 1935 Notes prescribe the means of service for letters rogatory requesting a Russian court to order and oversee discovery proceedings in Russia. Stated simply, nothing in the 1935 Notes (or under any other Russian law) prohibits the service by hand of a document that notifies an individual about proceedings authorized by a foreign court. (Eliseev Declaration, ¶18.)

Fourth, even if the 1935 Notes were applicable, "[they do] not prohibit other means of service." *Forum Financial Group, LLC v. President and Fellows of Harvard College*, 173 F. Supp. 2d 22, 24 (D. Me. 2001) (court questioned continued validity of 1935 Notes but determined that, even if they were in effect, they only applied to rogatory letters and did not prescribe the exclusive means for service of process). Here, as in *Forum Financial Group*, this Court can and should acknowledge the alternative forms of service authorized under the Federal Rules.

2.  **Rule 4 of the Federal Rules of Civil Procedure Governs Service.** Barbanel's next new argument is that Rule 4 of the Federal Rules does not apply because it relates to service of a summons and complaint, not a subpoena. Specifically, he contends that the hand delivery expressly allowed under Rule 4(f)(2)(C)(i) is limited to service of a summons and complaint (i.e., service of process). But both 28 U.S.C. §1783 and Rule 45 expressly direct

**C L I F F O R D**
**C H A N C E**

CLIFFORD CHANCE US LLP

Honorable John J. Hughes
October 3, 2006

Page 3

that service of this subpoena should be "effected in accordance with the provisions of the Federal Rules of Civil Procedure relating to *service of process* on a person in a foreign country." F.R.C.P. 45 (directing that service of a subpoena on a US national in a foreign country be made in accordance with §1783); and 28 U.S.C. §1783 (making it clear that service be effected in accordance with the rules "relating to service of process"). It is elemental that the rules that govern such service are set forth in Rule 4(f) ("Service Upon Individuals in a Foreign Country.") Service of the subpoena perfected in compliance with that rule is, therefore, valid.

Here, contrary to Barbanel's new arguments on reply, Oxus perfected service as required under Rule 4(f). Because there are no currently effective "internationally agreed means of service," the operative question is whether hand service of the subpoena was either (a) "prohibited by the law of the foreign country," F.R.C.P. 4(f)(2)(C)(i); and/or (b) consistent with the means for "service in that country in an action in any of its courts of general jurisdiction." F.R.C.P. 4(f)(2)(C)(ii). As set forth more fully in the attached Eliseev Declaration, the clear answer is that nothing under Russian law prohibits such service. (Eliseev Declaration, ¶ 18.) And, such service is fully consistent with modern standards of service set out under Russian law and as applied by Russian courts. (*Id.*)

The reply declaration submitted by Barbanel's counsel from his law firm in Russia that tries to suggest otherwise is not to the contrary and should be disregarded. (Ivanov Declaration, Exh. D to Barbanel Reply.) That declaration, which recognizes that the Hague Service Convention does not apply and that the 1935 Notes relates principally to rogatory letters, asserts only that the 1935 Notes do not expressly allow hand service of other judicial documents. Tellingly, this new declaration does not contend that such service is *prohibited* under Russian law, only that it is not specifically provided for as a means of service. *See Forum Financial Group, LLC,* 173 F. Supp. 2d at 24 (noting that it is only a method that is "*specifically* barred" by an international agreement that limit the means of service authorized under the Federal Rules). Because there is no dispute that hand service is not prohibited, such service complies with Rule 4 of the Federal Rules of Civil Procedure.[2]

3.      **Barbanel Resides in this District.** Concerning the question of whether he resides in this District, Barbanel has submitted a new declaration with a new slate of factual assertions intended to illustrate that he lives in Moscow. But, although he quibbles with some of the details Oxus ferreted out, Barbanel's new facts do not refute any of the essentials: he leases and lives in (at least during various times throughout the year) a residential apartment in this District; he is registered with the New Jersey Bar using a Princeton residential address (a membership that he renewed at that address only a few months ago); he is registered to vote

---

[2] Moreover, the declaration from Barbanel's lawyer ignores the actual practices that routinely govern service under Russian law as reflected in the independent views expressed by both the U.S. Department of Justice (LaForge Declaration, Exh. 2) and the Eliseev Declaration submitted herewith. (Exh. A.) Indeed, unlike Barbanel's own counsel in Russia, Professor Eliseev is an independent legal scholar from one of Russia's leading universities. (Eliseev Declaration, ¶ 1.)

**C L I F F O R D**
**C H A N C E**

CLIFFORD CHANCE US LLP

Honorable John J. Hughes
October 3, 2006

Page 4

in this District and has actually voted here as recently as 2004; he maintains regular doctor appointments with his physician in this District; he pays residential property taxes in this District and owns a residential property here; and he maintains for "his convenience" personal and business telephone numbers and mailing addresses in this District. Nothing in his new Declaration refutes these facts.[3]

These undisputed facts demonstrate that wherever else Barbanel may maintain places of abode, he very clearly must include this District as among the places where he "resides or is found." At best, Barbanel's new declaration addresses the question of where he presently is domiciled, not the distinctly different issue of the locations where he "resides." Courts, in this regard, uniformly recognize that "a person can have more than one residence" when assessing questions of jurisdiction under Title 28. *See, e.g., Hamilton v. Accu-Tek, et al.*, 13 F.Supp. 366, 369-370 (S.D.N.Y. 1998)(recognizing established distinction under Title 28 between "domicile" and "residence"). And, under New Jersey law, there is little doubt that Barbanel is a New Jersey "resident." *See, e.g., Santeez v. State Farm Insurance Company*, 338 N.J.Super. 166, 173-174 (N.J. Super. 200)(holding that insured who maintained residences in both Florida and New Jersey was a New Jersey resident for insurance purposes even though Florida was insured's domicile); *Furmato v. State of New Jersey*, 16 N.J. Tax 10, 16 (N.J. Tax Ct. 1996) (taxpayer who maintained residences in both New Jersey and Florida was a New Jersey resident for New Jersey personal property tax purposes). Indeed, the facts before the Court demonstrate nearly all the indicia that support a finding that Barbanel is "domiciled" in New Jersey, much less the more easily established proof that he "resides" in New Jersey. *See Hamilton v. Accu-Tek, et al.*, 13 F.Supp. 366, 369-370 (noting that the indicia of "domicile" include "[maintaining a place of] residence, voter registration, past voting venues, location of bank accounts and personal property, membership in churches and other organizations, tax payments").[4]

---

[3] Notably, Barbanel's new declaration also concedes that within the past year, he used a business card that, in apparent contradiction of his first declaration, showed a New Jersey office location for his company, SIG. His only explanation for this contradiction is that the business card he circulated a few months ago is now "out of date."

[4] We also think that, on the issue of residence, Barbanel's new Declaration is more telling for what it does *not* include. He will not disclose where he now purports to live or work in Moscow, claiming that such information is confidential; he has not produced a copy of his U.S. passport that would establish just how frequently he travels back and forth from Moscow to the United States; and he avoids stating whether he files New Jersey or United States income tax returns or otherwise pays taxes in Russia. These omissions are conspicuous, particularly when Barbanel has principally relied on a case where such facts were dispositive as to residence. *See In re Kolomoisky*, No. M19-116, 2006 WL 2404332 (S.D.N.Y. Aug 18, 2006)(relied on by Barbanel; court held that §1782 respondent did not "reside" in New York where he did not maintain any residential property or telephone lines in his name, did not file New York state or federal income tax returns, and produced a passport showing that he had spent no more than 12 days in the United States).

C L I F F O R D
C H A N C E

CLIFFORD CHANCE US LLP

Honorable John J. Hughes
October 3, 2006

Page 5

Thank you for your kind consideration of this limited surreply brief. We will address other issues presented in the briefs, including those in the reply that were previously addressed in Oxus' opposition papers, at oral argument.

Sincerely,

Jon R. Roellke
Clifford Chance US LLP
2001 K Street, NW
Washington, DC 20006


Thomas R. Valen, Esq.
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, NJ 07102-5497


attachment

cc: Douglas S. Eakeley, Esq. (via ecf and Federal Express)

# Exhibit A

# Declaration of Nikolia Georgievich Eliseev

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF OXUS GOLD PLC FOR ASSISTANCE BEFORE A FOREIGN TRIBUNAL | Honourable Garrett E. Brown Jr., U.S.D.J.<br>Honourable John J. Hughes, U.S.M.J.<br>Index No. MISC-06-82 |

### DECLARATION OF NIKOLAI GEORGIEVICH ELISEEV

I, NIKOLAI GEORGIEVICH ELISEEV, declare as follows:

1. I am a law practitioner in Russia and have extensive experience with the Russian judiciary. I am an associate professor at the Private International and Civil Law Department of the Moscow State Institute of International Relations (hereinafter "MGIMO") of the Ministry of Foreign Affairs of the Russian Federation, visiting professor of the Institute of Private Law at the Administration of the President of the Russian Federation, and an arbitrator of the Commercial Arbitration Court at the Russian Chamber of Commerce and Industry.

2. I have the following qualifications and experience. I received my legal education at MGIMO, and from 1980 to 1983 I was a postgraduate researcher. My Ph.D. thesis was entitled *Evidence in Civil Procedure in Germany*.

3. My lecturing career since 1983 has included, inter alia, civil procedure law of the Russian Federation and foreign countries, and private international law. I have numerous publications in the aforementioned spheres; the list thereof is attached as Exhibit 1 to this Declaration.

4. I have been asked by the attorneys for Oxus Gold plc to provide my opinion addressing whether or not service of a court notice by hand by private agent in the territory of the Russian Federation is prohibited under Russian law.

5. There is an international treaty – the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters of 15 November 1965 (hereinafter the "Convention") – to which both the Russian Federation and the United States are parties.

6. In 2004 the Russian Federation filed a declaration of accession to the Convention in accordance with Article 21 thereof (hereinafter the "Declaration"). Paragraph V of the Declaration contains the following reservation: *"Service of documents by the methods listed in Article 10 of the Convention is not permitted in the Russian Federation."*

This means that under the Convention it is not permitted within the Russian Federation to send judicial documents by postal channels directly to persons abroad; judicial officers, officials or other competent persons of the State of origin or any person having an interest in a judicial proceeding does not

have the right to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

7.  In accordance with other provisions of the Declaration (par. VIII), the Russian Federation assumes that in accordance with Article 12 of the Convention the service of judicial documents coming from a Contracting State shall not give rise to any payment or reimbursement of taxes or costs for the services rendered by the State of destination. Collection of such costs (with the exception of those provided for by sub-paragraphs (a) and (b) of the second paragraph of Article 12) by any Contracting State shall be viewed by the Russian Federation as refusal to uphold the Convention in relation to the Russian Federation, and, consequently, the Russian Federation shall not apply the Convention in relation to such Contracting State.

8.  The USA has delegated service of foreign process under Article 5 to a private subcontractor. That subcontractor is authorized to charge a fee on foreign plaintiffs for handling service in the United States under Article 5 of the Convention. The Russian Federation protested the levying of such fee, asserting that it contravenes the provisions of the Convention.

9.  Thus the provisions of the Convention are not applicable to relations between the Russian Federation and the USA. The Declaration, as an integral part of the Convention, is also not applicable.

10. Another treaty concluded in 1935 by exchange of notes between the USSR and the USA regulates the procedure of enforcement of court orders where a court of one country sends a court order on performance of a procedural action in the territory of the other (the "1935 Treaty"). The 1935 Treaty sets out the diplomatic procedure of relations between the courts of these countries and does not contain any special rules expressly related to the procedure for service of judicial documents or prohibiting such service by private persons. What is more, at present the 1935 Treaty, while officially still effective, is in point of fact no longer applied.

11. To answer the question of whether or not service of a court notice by hand by private agent in the territory of the Russian Federation is prohibited under Russian law, one must consider the general rules and principles of Russian law relating to the service of judicial documents

12. In Russian law, service of judicial documents (notices and summons) is regarded, first of all, as an instrument to inform the parties to and other persons involved in a proceeding about the time and place of court hearings and / or other procedural actions to give them the opportunity to realize or defend their interests. To this end any means of communication may be used, including post, registered mail, telegrams, fax or e-mail. A summons or notice may be delivered by a person with whom the judge entrusts their delivery. The law does not require a formal judicial action of service. The essential objective is that all these means results in due and proper notification of the addressee and allow for sufficient evidence that the document has been served. This statement follows from Articles 113 and 115 of the Code of Civil Procedure of the Russian Federation of 14 November 2002 (as last amended by the Federal Law of 27 December 2005) (hereinafter the "CCP"), which regulates civil proceedings in courts of general jurisdiction, and Articles 121 and 122 of the Code of Arbitrazh Procedure of the Russian Federation of 24 July 2002 (as last amended by the Federal Law of 27 December 2005 and the decree of

3

the Constitutional Court of the Russian Federation of 2 March 2006) (hereinafter the "CAP"), which regulates the proceedings in arbitrazh courts, i.e. state commercial courts.

13. Foreign nationals who are involved as parties, witnesses or experts in legal proceedings in the Russian Federation are to be notified in the same way as the citizens of the Russian Federation, unless established otherwise by an international treaty to which the Russian Federation is a signatory (Art. 113 (6) CCP, Art. 254 (1) CAP). The above-mentioned means of communication and delivery by a private person may be used.

14. If foreign nationals involved in cases examined by a Russian court are staying or reside outside the jurisdiction of the Russian Federation, they are to be notified of such legal proceedings with a court's ruling through the forwarding of a corresponding court order to a judicial institution or other competent body of the relevant foreign state (Art. 407 (4) CCP, Art. 253(3) CAP). In practice, Russian courts do not consider such official procedure to be obligatory. I am aware of the court cases where the courts have found that using the most convenient way to notify a person outside the territory of the Russian Federation does not constitute non-compliance with the Russian law. The Federal Arbitrazh Court of the Moscow District, in its decision of 20 March 2003 in case KG-A40/8139-02, to ensure more rapid notification, entrusted the claimant to notify the defendant, a foreign company resident in Singapore, of the time and place of the judicial hearing. The Federal Arbitrazh Court of the Far East District, in its decision of 15 April 2006 in case F03-A80/06-1/3, came to the conclusion that the parties to the dispute – foreign companies resident in Cyprus – were duly notified in compliance with Article 10 of the Convention, including the rule stipulating that documents may be sent directly to persons abroad.

15. The above-mentioned court cases are based on the concept that it is a purpose of the service of judicial documents to convey information and it does not constitute an action of judicial authority. Otherwise service of Russian court documents outside the Russian Federation without the permission of the State of destination would constitute violation one of the basic principles of international law – mutual respect of state sovereignty – and contradict the Constitution of the Russian Federation, which fixes the priority of international law in Russia.

16. Russian law contains rules regulating how a request from a foreign country for service of judicial documents should be dealt with in the territory of the Russian Federation. Courts in the Russian Federation are to fulfil requests for performance of individual procedural actions which have been made by foreign courts (such as serving notices and other documents, obtaining explanations of parties, evidence of witnesses and conclusions of experts, conducting field examination, etc.) according to the procedure prescribed in international treaties to which the Russian Federation is a signatory or federal laws. A request from a foreign court that individual procedural actions be performed is not subject to fulfilment if such would impinge the sovereignty of the Russian Federation or threaten the security of the Russian Federation (Art. 407(1), (2) CCP, Art. 256 (1), (2)) CAP).

17. However, in line with the above official procedure, in accordance with the principle of reciprocity, if Russian courts consider it lawful to send a judicial document by letter directly to a party abroad or entrust a private person to serve a judicial document outside the jurisdiction of the Russian

Federation in order to notify the addressee of procedural actions, the service of documents originating from foreign courts and serving a similar purpose may be performed in the same way. Here, once again (also see §13 of this Declaration), service of a document by one private person on an addressee who is also a private person, notifying the latter of some procedure in a foreign court, does not constitute the exercise of judicial authority by that court in Russia. Therefore, no special sanction need be obtained from the competent state bodies of the country in which such actions are performed. From the standpoint of Russian Federation procedural law, service of a document that does not require action by a Russian court or require that actions be taken in Russia is not an action related to the dispensation of justice under Russian law. Therefore, there is nothing under the 1935 treaty or Russian law that prohibits service of a document by one private person on an addressee who is also a private person, notifying the latter of some procedure in a foreign court.

18. Based on the above, I declare that personal service of a foreign court notice by hand by private agent in the territory of the Russian Federation is not prohibited under Russian Law.

> I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 2 October 2006
Moscow, Russian Federation

Signature: *[signature]*

Nikolai Georgievich Eliseev