# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN RE IN THE MATTER OF THE : MISC: 06-82
APPLICATION OF OXUS GOLD PLC :
FOR ASSISTANCE BEFORE A :
FOREIGN TRIBUNAL : **MEMORANDUM OPINION**
_____ :

## HUGHES, U.S.M.J.

This matter is before the Court upon the Motion of Respondent Jack A. Barbanel

("Respondent") to Vacate this Court's Orders of August 14, 2006 and August 18, 2006, to Quash

Subpoena, and to Award Fees and Costs pursuant to 28 U.S.C. § 1782, 28 U.S.C. § 1783, and the

Federal Rules of Civil Procedure.  Petitioner Oxus Gold PLC ("Petitioner") opposes the Motion.

Respondent's Motion is in response to two Orders issued by this Court.  The first was an *ex parte*

Order on August 14, 2006, which granted Petitioner's Application to serve a subpoena pursuant

to 28 U.S.C. § 1782 on Respondent within the District of New Jersey.  The second *ex parte*

Order, on August 18, 2006, found that the requirements of 28 U.S.C. § 1783 were satisfied and

authorized Petitioner to serve Respondent, who was living in Moscow, Russia, with the subpoena

abroad.  The subpoena seeks certain documents and testimony from Respondent and would

require him to travel from Moscow, Russia to Trenton, New Jersey for a deposition.  The Court

reviewed the written submissions of the parties and conducted oral argument on October 5, 2006.

For the reasons that follow, Respondent's Motions to Vacate this Court's Order of August 14,

2006, to Quash the Subpoena, and for attorneys' fees and costs are denied.  Respondent's Motion

to Vacate this Court's Order of August 18, 2006, is granted.

1

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Oversees Proceedings

Petitioner Oxus is an international mining group based in the United Kingdom.  (Pet.'s

Mem. at 6).  In 1998, Petitioner's subsidiary, Norox Mining Company Ltd. ("Norox") and the

State Enterprise Kyrgyzaltyn Joint Stock Company ("KA") jointly created the Talas Gold Mining

Company ("TGMC") for the purpose of developing the Jerooy gold deposit in the Kyrgyz

Republic ("the Republic").  (Kolleeny Decl. at ¶¶ 3-4).  Petitioner states Norox is its wholly

owned subsidiary and that TGMC, which is controlled 66.7% by Norox and 33.3% by KA, is

majority owned by Petitioner.  (Pet.'s Mem. at 6).

The Republic granted TGMC a license for the right to use the subsoil at the Jerooy gold

deposit.  (Kolleeny Decl. at ¶ 5).  When TGMC failed to fulfill its obligations under the license,

the Kyrgyz State Agency on Geology and Mineral Resources ("the Agency") suspended TGMC's

license in 2001 and then annulled it in 2002.  Id. at ¶ 6.  In 2003, the Republic reinstated

TGMC's license in return for TGMC's agreement to develop the mine along an accelerated time

frame.  Id. at ¶ 7.  When TGMC again failed to meet its obligations under the license, the Agency

canceled the license on August 3, 2004 and formally approved this decision by Resolution No.

597 on August 11, 2004.  Id. at 8.

In November 2005, Respondent, managing director of SIG Overseas Limited ("SIG"), a

corporate finance and private equity consulting company based outside the United States,

contacted the Republic on behalf of a client who potentially was interested in competing for the

license to develop the Jerooy mine.  (Barbanel Decl. at ¶¶ 2, 4, 6).  The Republic's

representatives expressed to Respondent that they would not reconsider the decision to annul

2

TGMC's license and that they had no obligation to reinstate the license.  Id. at ¶ 6.

Upon request by the Republic's representatives, Respondent met with Petitioner on December 1, 2005 regarding the purchase of Norox's interest in the Jerooy mine.  Id. at ¶¶ 8-9. However, no agreement was reached between the parties regarding the sale of Norox's interest. Id. at ¶ 9.  KA terminated the TGMC joint venture on February 24, 2006.  (Kolleeny Decl. at ¶ 15).

TGMC initiated three court proceedings in Kyrgyzstan in March 2006: (1) an action against the Agency challenging its August 3, 2004 decision to terminate the License; (2) an action against the Republic challenging the government resolution that approved the Agency's decision; and (3) an action against the Republic challenging the validity of Government Resolution No. 619, dated December 28, 2005, which instructed KA to search for a new investor. (Adamyan Decl. at ¶¶ 3, 6, 8).  Petitioner is not a named party in any of these three proceedings. (Kolleeny Decl. at ¶ 16).  Ultimately, the Republic's and Agency's acts were upheld.  (Adamyan Decl. at ¶¶ 3-7; Kolleeny Decl. at ¶ 16).  TGMC is currently appealing the decision upholding Government Resolution No. 619.  (Adamyan Decl. at ¶ 8).

Petitioner initiated arbitration proceedings against the Republic pursuant to the United Nations Commission on International Trade Law ("UNCITRAL") rules.  (Kolleeny Decl. at ¶¶ 19-20; Sheppard Decl. Ex. B.)  Based on the Republic's actions concerning TGMC, Petitioner claims that the Republic violated the Agreement for the Promotion and Protection of Investment between the United Kingdom and the Republic.  Id.  Further, the Prime Minister of the Republic has advised TGMC of potential compensation claims against TGMC for failing to fulfill its obligations under the license.  (Sheppard Decl. Ex. C).

On May 25, 2006, an Austrian corporation formed by SIG's client, entered into a joint venture with KA for development of the Jerooy mine. (Resp.'s Br. at 6). On July 6, 2006, the Primary First Trade Union Organization of TGMC then filed a claim in Kyrgyz court seeking invalidation of the resolution by the Republic approving the joint venture agreement. (Adamyan Decl. at ¶ 9; Sheppard Decl. Ex. A). This case was dismissed based on a lack of standing. (Adamyan Decl. at ¶ 9).

**2.      *Subpoena to Respondent***

On August 11, 2006, Petitioner filed an *ex parte* application pursuant to 28 U.S.C. § 1782 to take discovery of Respondent and SIG. (Dkt. no. 06-82, entry no. 1). In its application, Petitioner claimed that the requested discovery was for use in connection with the four claims in the Kyrgyz courts, the international arbitration proceeding, and the notice of compensation claim against TGMC. (August 11, 2006 App. ¶ 3). Petitioner further stated in its application that it was a party in a related arbitration proceeding against the Republic, a likely defendant in the compensation claim, and a party to four pending civil actions. Id. at ¶ 4. Petitioner also stated that Respondent and SIG have information relevant to the proceedings discussed in the application. Id. at ¶ 9.

On August 14, 2006, Petitioner's *ex parte* Application was granted by this Court pursuant to 28 U.S.C. § 1782 authorizing service of subpoenas for documents and testimony from Respondent and SIG. (Dkt. entry no. 3). When Petitioners could not serve Respondent in New Jersey, it filed an *ex parte* Application on August 16, 2006, seeking authorization under 28 U.S.C. § 1783 to serve Respondent in Moscow, Russia. (Dkt. entry no. 4). In its second application, Petitioner stated that Respondent resides in Princeton, New Jersey and was expected

4

to be in Moscow, Russia "at least through the end of this week." (August 16, 2006 App. at ¶¶ 1-2). This Court granted Petitioner's Application in an Order signed August 17, 2006 which authorized service abroad under Section 1783 and required that Petitioner tender $7,500 for travel expenses. (Dkt. entry no. 5).

On August 17, 2006, Petitioner served Respondent in Moscow by personal delivery. Respondent contends that "[s]uch service was accomplished by a false representation to Mr. Barbanel's secretary that a deputy to the Minister of Telecommunications and his assistant wished to meet with him at a hotel in central Moscow, where Mr. Barbanel consequently went, only to be met by two persons apparently from the Moscow office of the law firm of Clifford Chance." (Barbanel Decl. at ¶ 11). The subpoena was accompanied by "a written undertaking that tendered a commitment to reimburse [Respondent's] expenses for traveling to, and appearing for, his deposition in New Jersey." (Pet.'s Mem. at 10).

Respondent contends that the subpoena was authorized under neither 28 U.S.C. § 1782 nor 28 U.S.C. § 1783. Respondent further claims that (1) service was not proper, (2) fees were not properly tendered, (3) the information sought is overbroad and not relevant, and (4) Petitioner violated Local Rule 27.1 by applying for the subpoena *ex parte*. Petitioner claims that the subpoena was proper under Sections 1782 and 1783. Petitioner argues that the subpoena was properly served and fees were tendered. Petitioner further argues that the discovery is relevant and reasonably tailored.

## II.   DISCUSSION

Respondent contends that the subpoena is not authorized under 28 U.S.C. § 1782 because (1) Respondent resides in Moscow, Russia, (2) the discovery is not for use in a proceeding in a

foreign or international tribunal, and (3) Petitioner is not an interested person in the actions currently pending in the Kyrgyz Courts.  Respondent further argues that the subpoena was not authorized by 28 U.S.C. § 1783 because (1) Section 1783 applies to service in connection with proceedings pending in the United States, (2) the requirements of Section 1783 are not met, and (3) Petitioner violated Local Rule 27.1 by filing an *ex parte* Application for a subpoena of Respondent, a United States national who lives in Moscow, Russia.  Respondent further argues that the subpoena was not properly served under the Hague Convention on Service and that Petitioner did not tender the required fees.  Respondent requests attorneys' fees and costs.

Petitioner claims that the subpoena was proper under Section 1782 because (1) Respondent resides in the District, (2) the pending international arbitration proceeding satisfies the tribunal requirement, and (3) Petitioner is an interested person because it is the majority parent of TGMC.  Petitioner further argues that the subpoena was proper under Section 1783 because (1) the statute is not restricted to discovery for use in litigation pending in the United States, (2) Petitioner has met the necessity and interest of justice requirements, and (3) Petitioner properly proceeded with its *ex parte* applications.  Petitioner further argues that the subpoena was properly served and that fees were tendered.   Petitioner contends that the discovery is relevant and narrowly tailored.

## A.     *Section 1782*

Discovery from United States residents or those individuals found in the United States for use in foreign tribunals is governed by 28 U.S.C. § 1782.  Section 1782 provides in relevant part:

> (a)     The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal,

> including criminal investigations conducted before formal accusation.  The
> order may be made pursuant to a letter rogatory issued, or request made,
> by a foreign or international tribunal or upon the application of any
> interested person and may direct that the testimony or statement be given,
> or the document or other thing be produced, before a person appointed by
> the court. . . . To the extent that the order does not prescribe otherwise, he
> testimony or statement shall be taken, and the document or other thing
> produced, in accordance with the Federal Rules of Civil Procedure. . . .

28 U.S.C. § 1782(a).  A party seeking discovery under this statute must show (1) the party from

whom discovery is sought resides or is found in the District, (2) the discovery sought is for use in

a foreign or international tribunal, and (3) the party seeking discovery is an interested person.  Id.

In the present matter, all of the requirements of Section 1782 are met by Petitioner.  First,

Respondent resides or is found in the District given his contacts with New Jersey.  Second, the

discovery sought by Petitioner is for use in the arbitration proceedings brought against the

Republic pursuant to the United Nations Commission on International Trade Law

("UNCITRAL") rules, a foreign or international tribunal.  Third, the Petitioner Oxus Gold is an

interested party given that it owns a majority if TGMC, the Company central to the foreign

proceedings.  Therefore, Section 1782 is applicable, the requirements of the statute are satisfied,

and Petitioner may serve the subpoena upon Respondent in this District as authorized by this

Court's Order of August 14, 2006.  However, despite Petitioner having met the requirements for

Section 1782, the subpoena served on Respondent, which covers a broad range of topics and

seeks a broad range of documents, is unduly burdensome.  In the Court's discretion, it finds that

the scope of the subpoena should be modified.

### 1.    Residency Requirement

Section 1782(a) provides that "[t]he district court of the district in which a person *resides*

*or is found*" may authorize discovery be taken from him.  28 U.S.C. § 1782(a) (emphasis added).

A person can have more than one residence, given that the elements of permanency and

continuity are not necessary to a finding of residency as they are to a finding of domicile.

Santeez v. State Farm Ins. Co., 338 N.J. Super. 166, 173-74 (N.J. Super. 2000).  In analyzing

residency, other Courts have looked to (1) the location of a spouse or children, (2) ownership of

property, (3) location of filing for tax purposes, (4) amount of time spent in the United States,

and (5) location of full time employment.  In re Kolomoisky, No. M19-116, 2006 WL 2404332 at

* 3 (S.D.N.Y. Aug. 18, 2006); In re Microsoft Corp., 428 F. Supp. 2d 188, 193 (S.D.N.Y. 2006).

        In the present case, it is arguable that Respondent is a resident of New Jersey.

Respondent currently lives in Moscow, Russia with his Russian wife.  He is employed in

Moscow and regularly conducts business there.   However, Respondent leases a residential

apartment in New Jersey, is registered to vote in New Jersey, maintains regular doctor

appointments with his physician here, and travels to New Jersey at least two months every year to

vacation and visit his family.  Therefore, a valid argument can be made that although Respondent

presently lives and is employed in Moscow, Russia, Respondent has enough contacts with New

Jersey to be considered a resident.

        However, the Court need not determine whether Respondent is in fact a resident of this

District.  Section 1782(a) provides that a district court may authorize discovery of a person who

resides *or is found* in the district.  Whether or not Respondent is a resident in New Jersey, he is

admittedly present and can be found in New Jersey on a consistent basis every year.  Respondent

stays in New Jersey at a property that he rents for a total of two months out of every year.

(Resp.'s Mem. at 21).  Therefore, the first requirement of Section 1782, that Respondent reside

or be found in this district is satisfied.

> **2.      For Use in a Foreign or International Tribunal**

Section 1782 provides that a district court may order a person "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a).  The Supreme Court explained that "Congress introduced the word 'tribunal' to ensure that 'assistance is not confined to proceedings before conventional courts,' but extends also to 'administrative and quasi-judicial proceedings.'"  Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 249 (2004).  The Supreme Court found that the European Commission was a tribunal under Section 1782.  Id. at 258.  The European Commission "exercises responsibility over the wide range of subject areas covered by the European Union treaty."  Id. at 250.

The Second Circuit analyzed the meaning of "foreign or international tribunal" as it related to private international arbitration.  National Broadcasting Co. v. Bear Stearns & Co., 165 F.3d 184 (2d Cir. 1999).  After a review of the legislative history of Section 1782, the Second Circuit held that "when Congress in 1964 enacted the modern version of § 1782, it intended to cover governmental or intergovernmental arbitral tribunals and conventional courts and other state-sponsored adjudicatory bodies."  Id. at 190.  However, international arbitral panels created exclusively by private parties, such as private commercial arbitration administered by the International Chamber of Commerce, a private organization based in Paris, are not included in the statute's meaning.  Id. at 186, 190.

In the present matter, Petitioner claims to be seeking the information from Respondent for use in (a) an international arbitration proceeding; (b) several injunctive actions pending in

Kyrgyz Courts; and (c) a threatened claim for damages asserted by the Kyrgyz Government.  See

Pet.'s Mem. at 16.  The international arbitration at issue is being conducted by the United

Nations Commission on International Law, a body operating under the United Nations and

established by its member states.  The arbitration is not the result of a contract or agreement

between private parties as in National Broadcasting.  See Pet.'s Mem. at 17.  The proceedings in

issue has been authorized by the sovereign states of the United Kingdom and the Kyrgyzstan

Republic for the purpose of adjudicating disputes under the Bilateral Investment Treaty.  Id.

Therefore, it appears to the Court as if the international arbitration proceeding in the present case

is included as a "foreign or international tribunal" in Section 1782.  Petitioner has thus met the

second requirement under Section 1782.

       3.      **Interested person**

Section 1782 provides that "[t]he order may be made . . . upon the application of *any*

*interested person*."  28 U.S.C. § 1782(a) (emphasis added).  The Supreme Court has held that the

text of Section 1782's interested person requirement "plainly reaches beyond the universe of

persons designated 'litigant.'"  Intel, 542 U.S. at 256.  See also In re Microsoft Corp., 428 F.

Supp. 2d 188, 193 (S.D.N.Y. 2006) (noting that Microsoft, which faced substantial fines by the

European Commission for antitrust violations, was an interested party under Section 1782).

In Intel, where a party filed an antitrust complaint with the Directorate-General for

Competition of the Commission of the European Communities ("DG-Competition"), the

Supreme Court held that the complainant, "[a]lthough lacking formal 'party' or 'litigant' status in

Commission proceedings, . . . [had] significant procedural rights.  Most prominently, the

complainant may submit to the DG-Competition information in support of its allegations, and

may seek judicial review of the Commission's disposition of a complaint."  Intel, 542 U.S. at

246, 255.  The DG-Competition "conducts investigations into alleged violations of the European

Union's competition prescriptions."  Id. at 254.  The Supreme Court found that the complainant

had a certain role in the process which included prompting an investigation, submitting

information for consideration, and proceeding to court if the complaint is dismissed or the DG-

Competition discontinues investigation.  Id. at 256.  "Given these participation rights, a

complainant 'possess[es] a reasonable interest in obtaining [judicial] assistance,' and therefore

qualifies as an 'interested person' within any fair construction of that term."  Id. at 256.

In the present case, Petitioner is an interested person.  Petitioner Oxus Gold is the

majority parent of TGMC.  Although as in Intel, Petitioner is not a named party in the foreign

proceedings, TGMC is the named party in the Kyrgyz Court Claims and Compensation Claim.

(See Pet.'s Mem. at 19).  Further, Petitioner has invested more than $50 million in the Jerooy

project and has hundreds of millions of dollars in lost profits at stake.  Id. at 1.  Petitioner is

directly involved in international arbitration where it will submit information to the tribunal in

support of its case.  Thus, Petitioner has a definite and direct interest in obtaining judicial

assistance under Section 1782 and is considered an interested person under the statute.

### 4.        Discretion of the Court

Section 1782 provides that a district court *may* order a person to provide certain discovery

for use in a foreign tribunal.  28 U.S.C. § 1782(a).  Further, the Supreme Court has held "that §

1782(a) authorizes, but does not require, a federal district court to provide judicial assistance to

foreign or international tribunals or to 'interested person[s]' in proceedings abroad."  Intel, 542

U.S. at 247.  The Supreme Court noted the Senate Report's observation that "§ 1782(a) 'leaves

the issuance of an appropriate order to the discretion of the court which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable.'" Intel, 542 U.S. at 260-61. The Supreme Court further noted that "unduly intrusive or burdensome requests may be rejected or trimmed." Id. at 265.  See also In re Bayer AG, 146 F.3d 188, 192 (3d Cir. 1998) (holding that a district court "may refuse to issue an order or may impose conditions it deems desirable").  The Court further set out three factors that a district court may consider when presented with a Section 1782(a) request: (1) the nature of the foreign tribunal; (2) the character of the proceedings underway abroad; and (3) the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance.  Id. at 264.

Petitioner's subpoena is seeking broad-based document requests, including all documents pertaining to gold mining in the Republic and documents pertaining to financing of and communications with various entities involved in mining activities in the Republic.  See Dkt. entry no. 1.  Respondent contends that these requests are overbroad and burdensome.  (Resp.'s Mem. at 33).  The Court therefore finds that modification of the subpoena is appropriate. However, on October 5, 2006, during oral argument, both parties expressed a willingness to discuss modification of the scope of the subpoena and seek agreement without court intervention. Therefore, the Court need not dictate to the parties the necessary modifications at this time.

The Court finds that Section 1782 is applicable to the present case and that Petitioner has satisfied the requirements of the statute.  Therefore, there is no basis to vacate the Court's Order of August 14, 2006.  Petitioner may serve Respondent with the subpoena in the District of New Jersey in accordance with the Federal Rules of Civil Procedure and New Jersey Local Rules, as ordered by the Court on August 14, 2006.  However, it is appropriate that the scope of the

12

subpoena be modified and narrowly tailored.

As a postscript, the Court notes that the Supreme Court in <u>Intel</u> further found that Section 1782 imposed no foreign discoverability requirement. <u>Intel</u>, 542 U.S. at 253.  Therefore, a district court need not consider the discoverability in a foreign proceeding of the information sought before it decides whether to grant a Section 1782 application.  See also John Deere Ltd. v. Sperry Corp., 754 F.2d 132, 137 (3d Cir. 1985) (holding that "a district court is not to predict the admissibility of discovered evidence in foreign tribunals").  This Court, in analyzing the present matter, need not consider whether the information sought by Petitioner would be discoverable or admissible in the pending international arbitration proceeding.

**B.    Section 1783**

Subpoena of a United States national or resident living in a foreign country is governed by 28 U.S.C. § 1783.  Section 1783 provides in relevant part:

> (a)    A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country, or requiring the production of a specified document or other thing by him, if the court finds that particular testimony or the production of the document or other thing by him is necessary in the interest of justice, and, in other than a criminal action or proceeding, if the court finds, in addition, that it is not possible to obtain his testimony in admissible form without his personal appearance or to obtain the production of the document or other thing in any other manner.

28 U.S.C. § 1783(a).  For Section 1783 to be applicable, Petitioner must show that (1) there is a pending proceeding in the United States, (2) the information cannot be obtained through any other source, and (3) the information is necessary in the interest of justice.  <u>Id.</u>  In the present case, Petitioner does not satisfy any of the three requirements of Section 1783.  Therefore,

Section 1783 is inapplicable, and the Order of August 18, 2006 pursuant to Section 1783 must be vacated.

### 1.     Pending United States Proceeding

Section 1783(a) provides that "[a] court of the United States may order the issuance of a subpoena requiring the appearance as a witness *before it*, *or before a person or body designated by it*." 28 U.S.C. § 1783(a) (emphasis added). The plain language of the statute seems to require that proceedings be pending in the United States in order for Section 1783 to apply. This Court is aware of no case, and the parties could cite no case at oral argument, that applied Section 1783 to foreign proceedings.

In the present matter, the discovery requested by Petitioner is not connected to any pending United States proceeding or litigation. Petitioner is seeking information from Respondent for use in foreign arbitration and litigation. Specifically, Petitioner seeks Respondent's deposition testimony for use in (a) an international arbitration proceeding, (b) several injunctive actions pending in Kyrgyz Courts, and (c) a threatened claim for damages asserted by the Kyrgyz Government. Therefore, because Petitioner seeks information for use in foreign proceedings but has no domestic proceedings pending, Section 1783 is inapplicable.

### 2.     No Alternative Source

Section 1783(a) further provides that the Court may order the issuance of a subpoena for testimony of a party "if the court finds, in addition, that it is not possible to obtain his testimony in admissible form without his personal appearance or to obtain the production of the document or other thing in any other manner." 28 U.S.C. § 1783(a). Petitioner makes no showing that the information sought from Respondent in deposition cannot be obtained through other means

14

including written interrogatories.  Therefore, the second requirement of Section 1783 is not
satisfied.

### 3.    Interest of Justice

Section 1783(a) further provides that the Court may order the issuance of a subpoena for
testimony of a party if "that particular testimony or the production of the document or other thing
by him is necessary in the interest of justice."  28 U.S.C. § 1783(a).  Another district court has
considered this requirement and has found that this element "must be considered in light of the
circumstances of the particular case and, more importantly, the posture of the case when the issue
arises."  Klesch & Co. Ltd. v Liberty Media Corp., 217 F.R.D. 517, 523 (D. Colo. 2003).

The present case presents no compelling basis for finding that the interest of justice
demands Petitioner's subpoena stand under Section 1783.  Petitioner has a significant amount of
money at stake in its overseas proceedings.  It has invested over $50 million already in the Jerooy
mining project.  Therefore, the circumstances of the case are primarily financial.  Further, the
posture of the case does not satisfy the interest of justice requirement.  Petitioner argues that the
requested discovery is for use in an arbitration proceeding, several injunctive actions, and a
threatened compensation claim.  However, the injunctive actions are no longer pending, although
TGMC is appealing the decision upholding Government Resolution No. 619.  See Adamyan
Decl. ¶ 8.  In addition, no action had been taken by the Republic against TGMC regarding the
compensation claim at the time Respondent filed these Motions.  Therefore, the Court finds that
the circumstances and posture of the present case do not justify an "interest of justice" finding.

### 4.    Discretion

Section 1783 provides that "[a] court of the United States *may* order the issuance of a

subpoena." 28 U.S.C. § 1783(a) (emphasis added).  A district court is not required to issue the subpoena even though it has the authority to do so under Section 1783.  See Klesch, 217 F.R.D. at 523.

In the present case, Petitioner seeks to have Respondent travel from Moscow, Russia to Trenton, New Jersey for the purposes of a deposition to be used in international arbitration abroad.  Respondent, however, is not a party directly involved in the arbitration or other proceedings in the Republic.  Respondent was the managing director of SIG, a corporate finance and private equity consulting company based outside the United States.  Respondent contacted the Republic on behalf of a client who was interested in competing for the Jerooy mining license years after Petitioner's subsidiary's license was annulled.  Although the liberality of discovery in United States Federal Courts would most likely allow a subpoena to issue, the subpoena here is not appropriate under Section 1783 because the Court would be compelling Respondent to travel from Moscow to New Jersey for a deposition connected to foreign proceedings.

Further, Respondent is admittedly in New Jersey certain times during the year on a consistent basis.  If Petitioner had sought to take discovery of a party located in the District of New Jersey in connection with proceedings pending in the United States, then the subpoena would be proper.  However, Petitioner is seeking to compel Respondent to travel across continents for the purposes of a deposition in connection with international arbitration, regardless of the fact that Respondent will likely be traveling to New Jersey within the year.  Therefore, in the Court's discretion and because Petitioner has failed to satisfy the requirements of Section 1783, this Court's August 18, 2006 Order is vacated.

**C.**     ***Service and Fees***

Personal service abroad by Petitioner in this case was a fairly elaborate ruse and, as conceded at oral argument, was not condoned by counsel.  However, the Court need not reach the issue of whether service was effected or whether fees were tendered because it has found that Section 1783 is inapplicable and service in Moscow is void on that basis.

**D.      *Attorneys' Fees and Costs***

Respondent requests attorneys' fees and expenses incurred in filing these motions to vacate and quash.  However, the Court finds that Respondent's Motion to Vacate the August 14, 2006 Order pursuant to 28 U.S.C. § 1782 is denied.  Even though Respondent's Motion to Vacate the August 18, 2006 Order pursuant to 28 U.S.C. § 1783 is granted, there exists no clear case law on the issues raised in connection with this statute.  Further, at oral argument, Petitioner's counsel stated that at the time of service, he was unaware of the surreptitious means by which Respondent was served.  Petitioner's counsel further argued that he was unaware the Respondent was represented by counsel when he filed the Application under Section 1783. Therefore, the Court finds that attorneys' fees and costs are inappropriate in this case, and Respondent's Motion for Attorneys' Fees and Costs is denied.

**III.  <u>CONCLUSION</u>**

For the reasons expressed here, the Court finds that 28 U.S.C. § 1782 is applicable to the present matter.  Petitioner satisfied the statute's requirements by showing that Respondent resides or can be found in the district, that the pending international arbitration is a tribunal, and that Petitioner is an interested person.  Therefore, the Court holds that Respondent's Motion to Vacate the August 14, 2006 Order is denied.  However, the Court, in its discretion, finds that the scope of the subpoena is overbroad, burdensome, and shall be modified.  The parties agreed at

17

oral argument to discuss modification of the subpoena without intervention of the Court.

Therefore, Respondent's Motion to Quash the subpoena is denied.

The Court further finds that 28 U.S.C. § 1783 is inapplicable to the present case.

Petitioner has not shown that the discovery sought is for use in a pending United States

proceeding, that there is no alternative source for the information, and that the interest of justice

is satisfied.  Therefore, Respondent's Motion to Vacate the August 18, 2006 Order is granted.

The issues of service and fees were not reached after finding Section 1783 inapplicable, and

Respondent's Motion for attorneys' fees and expenses is denied.

An appropriate Order accompanies this Memorandum Opinion

**Dated: October 10, 2006.**