NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN THE MATTER OF THE APPLICATION   :
OF OXUS GOLD PLC FOR ASSISTANCE         MISC 06-82 - GEB
BEFORE A FOREIGN TRIBUNAL          :
                                                                           MEMORANDUM OPINION
                                   :

**BROWN, Chief Judge**

This matter comes before the Court upon Respondent Jack A. Barbanel's ("Barbanel" or "Respondent") Appeal of Magistrate Judge Hughes' Denial of Respondent's Motion to Vacate the Court's Order of August 11, 2006, and Petitioner Oxus Gold Plc.'s ("Oxus" or "Petitioner") Cross-Appeal of Judge Hughes' Grant of Respondent's Motion to Vacate the Court's Order of August 17, 2006.[1] The Court has fully reviewed all documents filed and submitted. For the reasons set forth below, the Court will deny Respondent's Appeal, and will deny Petitioner's Cross-Appeal.

**I.   BACKGROUND**

Oxus is an international mining group based in the United Kingdom. (Pet. Opp'n at 5.) Mr. Barbanel is the managing director of SIG Overseas Ltd. ("SIG"), a corporate finance and private equity consulting company. (Resp. Br. at 4.) Mr. Barbanel's primary residence is in Moscow, Russia, but he spends about two months every year in New Jersey. (Resp. Br. at 17; Pet. Opp'n at 12.)

---

[1]   The parties refer to the respective orders by their filing date. For the sake of clarity, this Court will refer to their signature date instead.

In September 1998, Norox Mining Company Ltd. ("Norox"), an Oxus subsidiary, entered into a joint venture agreement with Kyrgyzaltyn Open Joint Stock Company ("Kyrgyzaltyn"), a company owned by the Kyrgyz government. (Resp. Br. at 3; Pet. Opp'n at 5.) The joint venture company, Talas Gold Mining Company ("TGMC") was created for the purpose of developing and exploiting the Jerooy gold deposit in the Kyrgyz Republic. (Resp. Br. at 3; Pet. Opp'n at 5.) TGMC was majority controlled by Oxus. (Resp. Br. at 3; Pet. Opp'n at 5.)

TGMC was granted a license (the "License") to exploit the gold deposit in early 2000. (Resp. Br. at 3; Pet. Opp'n at 5.) In August 2004, however, the Kyrgyz government canceled TGMC's License, and withdrew Oxus' rights to develop the mine. (Resp. Br. at 3; Pet. Opp'n at 6.) In November 2005, Mr. Barbanel contacted the Kyrgyz government regarding the Jerooy Mine. (Resp. Br. at 4; Pet. Opp'n at 6.) Mr. Barbanel claims to have initiated said contact on behalf of a client, Global G.o.l.d. Holdings Gmbh ("Global Gold") interested in competing for the License to develop the mine. (Resp. Br. at 4.) Oxus contends that SIG was the management firm of Global Gold, and that Mr. Barbanel had power of attorney for Global Gold. (Resp. Br. at 5; Pet. Opp'n at 7.) Oxus contends that the actions of Global Gold and the Kyrgyz government were unlawful and resulted in discrimination against Oxus. (Pet. Opp'n at 7.) After unsuccessful attempts to have the License reinstated, Oxus halted development of the Jerooy Mine in February 2006. (Resp. Br. at 5; Pet. Opp'n at 7.)

Beginning in March 2006, TGMC initiated three actions in Bishkek Inter-Regional Court, Kyrgyzstan (the "Kyrgyz Court proceedings") challenging the actions of the Kyrgyz Government with respect to the License. (Resp. Br. at 5; Pet. Opp'n at 8.) In June 2006, Oxus also filed a Notice of Claim and Request for Arbitration (the "Arbitration claim") against the Kyrgyz

Republic under the United Kingdom-Kyrgyz Bilateral Investment Treaty (the "BIT"), claiming that the Kyrgyz government's actions with respect to the Jerooy Mine violated the BIT. (Resp. Br. at 5-6; Pet. Opp'n at 9.) Finally, in May 2006, the Kyrgyz government indicated that it intended to file a Claim for Compensation against TGMC (the "Compensation Claim") for allegedly failing to develop the Jerooy Mine. (Resp. Br. at 6; Pet. Opp'n at 9.)

On August 11, 2006 Oxus filed an *ex parte* application with this Court pursuant to 28 U.S.C. § 1782 to obtain discovery from Barbanel and SIG for use in a foreign or international tribunal. (Resp. Br. at 7; Pet. Opp'n at 9.) The undersigned granted the request by order dated August 11, 2006 (the "Section 1782 Order"). Oxus subsequently filed another *ex parte* application, pursuant to 28 U.S.C. § 1783, to allow service *abroad* of the subpoena authorized under the Section 1782 Order. (Resp. Br. at 10-11; Pet. Opp'n at 10.) Magistrate Judge Hughes granted that request by order dated August 17, 2006 (the "Section 1783 Order"). On September 5, 2006, Mr. Barbanel filed a motion to vacate the Section 1782 Order and the Section 1783 Order. By order dated October 10, 2006 (the"Hughes Order"), Judge Hughes denied the request to vacate the Section 1782 Order and granted the request to vacate the Section 1783 Order.

Mr. Barbanel appeals Judge Hughes' denial of Mr. Barbanel's motion to vacate the Section 1782 Order. Oxus, for its part, cross-appeals Judge Hughes' grant of Mr. Barbanel's motion to vacate the Section 1783 Order. Each party's appeal will be addressed in turn.

## II.      DISCUSSION

### A.      STANDARD

Local Civil Rule 72.1(c)(1)(A) and Federal Rule of Civil Procedure 72(a) provide that a Magistrate Judge's ruling on a non-dispositive motion will be set aside only if the order is "clearly erroneous or contrary to law." *See* L. CIV. R. 72.1(c)(1)(A); FED. R. CIV. P. 72(a). Such rulings are "entitled to great deference and [are] reversible only for abuse of discretion." *Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996).[2]

### B.      APPLICATION

#### A.      Respondent's Appeal – 28 U.S.C. § 1782

In denying Respondent's Motion to Vacate the Section 1782 Order, Judge Hughes found that Oxus was entitled, under 28 U.S.C. § 1782, to serve a subpoena on SIG and Mr. Barbanel in connection with foreign litigation. The Court will affirm Judge Hughes' decision to uphold the Section 1782 Order.

Under 28 U.S.C. § 1782(a),

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). In essence, the Court may order a person to offer testimony or produce documents if three requirements are satisfied: "(1) the person must reside (or be found) in the

---

[2] It is uncontested that Respondent's motion to vacate was a non-dispositive motion.

district in which the application is made; (2) the discovery must be "for use" in a proceeding before a foreign tribunal; and (3) the application may be made by a foreign or international tribunal or 'any interested person.'" *In re Imanagement Servs.*, No. 05-2311, 2006 U.S. Dist. LEXIS 8876, at *5 (D.N.J. Feb. 28, 2006), *citing, inter alia, In re Bayer A.G.*, 146 F.3d 188, 193 (3d Cir. 1998).

Even if the statutory requirements are met, however, the Court may, in its discretion, deny a request for discovery under 28 U.S.C. § 1782(a). *In re Imanagement*, at *9, *citing Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Among the four factors to be taken into consideration in the court's exercise of discretion are the following:

> (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding;
>
> (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court assistance;
>
> (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or policies; and
>
> (4) whether the request is unduly intrusive or burdensome.

*In re Imanagement*, at *10, *citing Intel*, at 264.

In ruling upon Barbanel's motion to vacate, Judge Hughes found that each of the three requirements set out in *In re Imanagement* had been met, and that the Court had properly exercised its discretionary power to grant Oxus' request for discovery pursuant to 28 U.S.C. § 1782. Mag. J. Op. at 7. Respondents, however, contend that the Magistrate Judge erred in his application of Section 1782, and that his opinion should therefore be reversed.

1.      Whether Mr. Barbanel resides or can be found in the district

Respondent argues that the Magistrate Judge erred in concluding that he "resides" or "is found" in the District of New Jersey. Resp. Br. at 17. Mr. Barbanel concedes that he maintains some contacts with the district, but insists that such contacts are not sufficient to satisfy the requirements of 28 U.S.C. § 1782. *Id.* at 17-18. Respondent alleges in particular (1) that he resides in Moscow, Russia, (2) that he and his Russian wife maintain their primary residence in Moscow, (3) that he is employed in Moscow, and (4) that he regularly conducts business there. *Id.*

Oxus responds that the evidence in fact conclusively establishes that Mr. Barbanel resides in the district of New Jersey, and that the portion of Judge Hughes' Order relating to the Section 1782 Order should therefore be affirmed. Pet. Opp'n at 12. Indeed, Oxus claims that Mr. Barbanel (1) "leases a residential apartment in New Jersey in which he resides at least two months each year," (2) "has owned for more than 23 years a separate residential property in New Jersey," (3) is registered to vote in the district of New Jersey, (4) is a member of the New Jersey State Bar, (4) uses a business card that identifies Princeton, New Jersey as one of the office locations of his company, SIG, (5) receives personal and business telephone calls in Princeton, and (6) "maintains regular appointments with his physician who is located in New Jersey." *Id*. at 12-13. In the alternative, Oxus contends that the evidence establishes at the very least that Mr. Barbanel can be "found," for the purposes of 28 U.S.C. § 1782, in the district of New Jersey. *Id.* at 14.

Faced with the evidence of Mr. Barbanel's frequent and sustained contacts with the district, Judge Hughes declined to hold that Mr. Barbanel was a resident of New Jersey, but

found that the requirements of the statute were nonetheless met as Mr. Barbanel was "admittedly present and [could] be found in New Jersey on a consistent basis every year." Mag. J. Op. at 8. Given the wealth of evidence establishing Mr. Barbanel's strong ties to the district of New Jersey, this Court concludes that Magistrate Judge Hughes' finding that Mr. Barbanel "resides or can be found" in New Jersey was not clearly erroneous. *See Edelman v. Taittinger*, 295 F.3d 171, 178-79 (2d Cir. 2002) (advocating flexible interpretation of the phrase "resides or is found," and criticizing suggested interpretation of Section 1782 requiring potential deponent to be in the district *at the time the discovery order is issued.*).

    2.  Whether the requested discovery is "for use" in a proceeding before a foreign tribunal

Respondent also contends that the discovery sought by Oxus is not "for use" in a "proceeding in a foreign or international tribunal," and that Judge Hughes therefore erred in upholding the Section 1782 Order. Resp. Br. at 20. The Court disagrees.

    a.  Foreign Tribunal

Respondent argues that "Section 1782 does not apply to *private* international arbitration," and that the Arbitration – the only proceeding, it claims, identified by Judge Hughes as satisfying the requirements of Section 1782 – cannot provide a basis for the Magistrate Judge's opinion. *Id.* at 20 (emphasis added). Indeed, Respondent contests Judge's Hughes' findings that the Arbitration has "been authorized by the sovereign states of the United Kingdom and Kyrgyzstan" and that it is being "conducted by the United Nations Commission on International Law." *Id.* at 20 (quotations omitted), *quoting* Mag. J. Op. at 10.

Respondent insists, instead, that the arbitration panel consists of three private individuals chosen by the parties, is "neither a governmental nor intergovernmental arbitral tribunal," is not "being conducted by any United Nations committee," and does not involve claims "between sovereign nations or their instrumentalities." Resp. Br. at 21-23. Respondent concludes that the discovery sought by Oxus cannot be deemed "for use" in a "foreign tribunal" under 28 U.S.C. § 1782, and that Judge Hughes' decision to uphold the Section 1782 Order should therefore be reversed.

Petitioner responds that the arbitral body conducting the Arbitration "was expressly authorized by the United Kingdom and Kyrgyzstan as an important component of their Bilateral Investment Treaty," and that the Arbitration is therefore conducted "pursuant to adjudicatory authority vested by an international agreement among sovereign entities." Pet. Opp'n at 17. Petitioner concludes that "Judge Hughes correctly found that this arbitration is not the result of a contract or agreement between the *private* parties, but instead is a proceeding authorized by [national government entities] for the purpose of adjudicating disputes under the Bilateral Investment Treaty." *Id.* at 19 (quotations omitted).

Both the Second and Fifth Circuits have held that private international arbitrations do not constitute " foreign and international tribunals" under 28 U.S.C. § 1782. *See Application of the Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 883 (5th Cir. 1999) ("the term 'foreign and international tribunals' in § 1782 was not intended to authorize resort to United States federal courts to assist discovery in private international arbitrations."); *N.B.C., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 191 (2d Cir. 1999) ("policy considerations of some magnitude reinforce our conclusion, based upon an analysis of the text and legislative history of

§ 1782, that Congress did not intend for that statute to apply to an arbitral body established by private parties."). The *N.B.C.* court noted in particular that "the legislative history reveals that when Congress in 1964 enacted the modern version of § 1782, it intended to cover governmental or intergovernmental arbitral tribunals and conventional courts and other state-sponsored adjudicatory bodies." *N.B.C.*, 165 F.3d at 190.[3]

In the case at bar, however, Article 8 of the BIT Agreement between the United Kingdom and Kazakhstan specifically mandates that disputes between nationals of the two countries would be resolved by arbitration governed by international law.[4] The Arbitration at issue in this case,

---

[3] The Court is unaware of – and the parties have not offered – any decision in this Circuit fully addressing the issue.

[4] Indeed, Article 8 of the BIT Agreement provides, in relevant part:

> Settlement of Disputes between an Investor and a Host State
>
> (1) Disputes between a national or company of one Contracting Party and the other Contracting Party concerning an obligation of the latter under this Agreement in relation to an investment of the former which have not been amicably settled shall, after a period of three months from written notification of a claim, be submitted to *international arbitration* if the national or company concerned so wishes.
>
> (2) Where the dispute is referred to international arbitration, the national or company and the Contracting Party concerned in the dispute may agree to refer the dispute either to:
>
>> (a) the International Centre for the Settlement of Investment Disputes (having regard to the provisions, where applicable, of the Convention on the Settlement of Investment Disputes between States and Nationals of other States . . . ); or
>>
>> (b) the Court of Arbitration of the International Chamber of Commerce; or
>>
>> (c) an international arbitrator or ad hoc arbitration tribunal to be

between two admittedly private litigants, is thus being conducted within a framework defined by two nations and is governed by the Arbitration Rules of the United Nations Commission on International Trade Law (the "UNCITRAL rules").  In light of these facts, this Court concludes that the Magistrate Judge's holding that the arbitration panel in the case at bar constituted a "foreign tribunal" for purposes of a 28 U.S.C. § 1782 analysis was not clearly erroneous or contrary to law.

### b.   For Use

Respondent also argues that Judge Hughes should have vacated the Section 1782 Order on the ground that the discovery sought by Oxus was not *for use* in connection with any proceeding cited by Oxus other than the Arbitration.  Resp. Br. at 29.  Mr. Barbanel contends first that the proceedings in the Kyrgyz courts concern events that bear little or no connection to him, and that information gleaned from him through the discovery requests at issue here would not be relevant to those proceedings.  *Id.* at 29-30.

In addition, Mr. Barbanel claims that any such information would be inadmissible before the Kyrgyz courts, because the Kyrgyz court proceedings are currently before the Kyrgyz

---

> appointed by a special agreement or established under the Arbitration Rules of the United Nations Commission on International Trade Law.
>
> If after a period of three months from written notification of the claim there is no agreement to one of the above alternative procedures, the dispute shall at the request in writing of the national or company concerned be submitted to arbitration under the Arbitration Rules of the United Nations Commission on International Trade Law as then in force. The parties to the dispute may agree in writing to modify these Rules.
>
> United Kingdom-Kyrgyz Republic Bilateral Investment Treaty, Declaration of Audley William Sheppard ("Sheppard Decl.") Ex. A, Art. 8 (emphasis added).

Supreme Court (which, allegedly, does not consider evidence that was not presented to the court of first instance) and because the Compensation Claim remains a potential claim – i.e. one that has yet to give rise to formal legal proceedings.  *Id.*  Respondent concludes that since the information sought would be neither relevant to, nor admissible in, said legal proceedings, such information could not be deemed "for use" before a foreign tribunal.

Petitioner responds that Mr. Barbanel "was, and is, [in fact,] directly involved with many of the events at issue in the foreign proceedings," and that it "strains credulity for Barbanel to now contend that he has no relevant information with respect to such matters." Pet. Opp'n at 24. As for Mr. Barbanel's admissibility argument, Oxus claims that controlling authority in this Circuit establishes that the Court need not assess the admissibility in foreign proceedings of the evidence sought from Mr. Barbanel. Oxus adds, in the alternative, that the Section 1782 Order should stand even if the Court had to make such a determination, as the information sought pursuant to the statute is likely to soon become admissible.  Indeed, it claims that "a remand of the Kyrgyz Court Claims would necessarily entail the submission of evidence not considered by the trial court," and that "the Kyrgyz Government has made plain its intention to pursue litigation against Oxus and TGMC" in connection with the Compensation Claims.  *Id.* at 20-21.

Addressing first the issue of the relevance of the information sought by Oxus, the Court's review of the record suggests that there exists significant evidence tying Mr. Barbanel to the events giving rise to those proceedings.  Judge Hughes was thus not clearly in error in finding that the information sought might prove of some relevance to the foreign proceedings.

Turning next to the issue of admissibility,  the Court notes that this Circuit has consistently held that a party seeking a discovery order under 28 U.S.C. 1782 need not

demonstrate that the information sought would be admissible in the foreign proceedings. *In re Bayer*, 146 F.3d at 193; *see also John Deere, Ltd. v. Sperry Corp.*, 754 F.2d 132, 133 (3d Cir. 1985) (holding that 28 U.S.C. 1782(a) does not require district court to consider the ultimate admissibility of evidence in the foreign jurisdiction.). The argument that the Section 1782 Order should be vacated on the ground that the evidence sought would not be neither discoverable nor admissible in the foreign proceedings is therefore unavailing.

Finally, the Supreme Court in *Intel* held that "Section 1782(a) does not limit the provision of judicial assistance to 'pending' [or imminent] adjudicative proceedings." *Intel*, 542 U.S. at 258. The Court held instead that Section 1782(a) should be read only to require that it be "within reasonable contemplation" that the evidence sought would be used in a dispositive proceeding. *Id.* at 259, *citing In re Crown Prosecution Serv.*, 870 F.2d 686, 691 (D.C. Cir. 1989). In the case at bar, it is within reasonable contemplation (1) that the matters before the Kyrgyz Court proceedings would be remanded back to the trial court (rendering the discovery at issue here "of use" in those proceedings) and (2) that the Compensation Claim would be litigated in the near future. The fact that any information elicited pursuant to the Section 1782 Order may not be immediately presented to the foreign courts does not compel Judge Hughes to vacate the Section 1782 Order.

For the foregoing reasons, Judge Hughes' finding that the evidence sought by Respondent would be "for use" in the foreign proceedings was not clearly erroneous.

> 3. Whether the application for discovery was made by a foreign or international tribunal or any interested person

While Respondent does not contest the claim that Oxus is an "interested party" with

respect to the Arbitration, he contends that Judge Hughes' ruling that Oxus was such an "interested party" in the Kyrgyz court proceedings was "clearly erroneous and contrary to law." Resp. Br. at 32. Indeed, Respondent insists that "it is clear that Oxus is not a party to any of the proceedings of the Kyrgyz courts," and that it "has no participation rights" in those proceedings. *Id.* at 32-33. Oxus responds that Magistrate Judge Hughes in fact correctly held that it "satisfied the interested party requirement with respect to those proceedings because Oxus is the majority parent of TGMC . . . a named party in the foreign Kyrgyz proceedings . . . ." Pet. Opp'n at 15.

The Supreme Court in *Intel* held that "[t]he text of § 1782(a), 'upon the application of any interested person,' plainly reaches beyond the universe of persons designated 'litigant.'" *Intel*, at 256. Given the close connection between Oxus, TGMC and the events having given rise to the Kyrgyz Court proceedings and the Compensation Claims, Judge Hughes's finding that Oxus was an "interested party" with respect to those proceedings was not clearly erroneous.

    4.  Whether the Magistrate Judge abused his discretion in refusing to vacate the Section 1782 Order

Respondent contends that "Magistrate Judge Hughes not only committed clear error in concluding that Oxus'[] application satisfied the threshold requirements of Section 1782; he also abused his discretion in determining that relevant factors favored requiring production of testimony and documents by Mr. Barbanel." Resp. Br. at 34.

First, respondent claims that "the information sought by the subpoena is neither admissible nor relevant in the foreign proceedings." *Id.* at 35. Mr. Barbanel contends that this should have lead Judge Hughes to vacate the 1782 Order. *Id.* Moreover, Respondent submits that Oxus' alleged failure to request any documents from Respondent when the Kyrgyz court

13

proceedings were at the trial level "severely undermin[es] any claim that Mr. Barbanel, who had no involvement in the events at issue in those litigation [sic], has information of any relevance to provide," and that any information sought by Oxus would not "be admissible in the Kyrgyz Supreme Court . . . ." *Id.* at 35-36.  Finally, Respondent argues that the Section 1782 Order should have been vacated on the grounds that "the requests for information from Mr. Barbanel [issued in connection with that Order] are unduly intrusive and burdensome". *Id.* at 36.

Oxus, for its part, takes exception to Mr. Barbanel's claims that he has no involvement in the proceedings at issue and that it would be unduly burdensome to comply with the subpoenas. Indeed, Oxus responds that "Barbanel was, and is, directly involved with many of the events at issue in the foreign proceedings," and notes that Barbanel does not "proffer any basis on which to conclude that Oxus is seeking anything but properly tailored discovery . . . ." *Id.* at 24.  Oxus adds that Barbanel cannot "explain how a single deposition limited to inquiries regarding Oxus, the Jerooy Mine, and Barbanel's efforts to secure conflicting rights in that mine could be construed as overly broad." *Id.*

As noted above, and as explained by Judge Hughes, this Circuit has held that Section 1782 does not include a foreign admissibility requirement.  Accordingly, Mr. Barbanel's argument that the information sought by Oxus was not admissible in the foreign proceedings is unavailing.  *See In re Bayer*, 146 F.3d at 193.  In addition, this Court has established above that it was not clearly erroneous for Judge Hughes to find that Mr. Barbanel might have information relevant to the Kyrgyz Court proceedings, the Arbitration and the Compensation Claim.  Finally, the wealth of evidence establishing that Mr. Barbanel enjoys regular and extensive stays in the district of New Jersey suggests that compelling him to submit to a deposition in the District

would not prove unduly burdensome. For the foregoing reasons, Magistrate Judge Hughes' discretionary decision to uphold the Section 1782 Order was not clearly erroneous.

This Court will therefore affirm Judge Hughes' denial of Respondent's Motion to Vacate the Section 1782 Order.

### B. Petitioner's Cross-Appeal – 28 U.S.C. § 1783

In his October 10, 2006 Order granting Respondent's Motion to Vacate the Section 1783 Order, Judge Hughes held that "in the Court's discretion and because Petitioner ha[d] failed to satisfy the requirements of Section 1783, [the Section 1783] Order [was to be] vacated." Mag. J. Op. at 16. Judge Hughes thus denied Oxus the right to serve, outside the United States, the discovery requests authorized under the Section 1782 Order. This Court will affirm Judge Hughes' decision.[5]

---

[5] Barbanel argues that Oxus' cross-appeal is untimely, on the grounds that "[u]nder the Local Civil Rules of this Court, Mr. Barbanel's appeal from Magistrate Judge Hughes' rulings on Section 1782 and on the scope of the subpoena does not give Oxus a right to cross-appeal an *independent order* concerning service under Section 1783." Resp. Reply at 2 (emphasis added).

Local Civil Rule 72.1(c)(1)(A) provides, in relevant part, that:

> Any party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 10 days after the party has been served with a copy of the Magistrate Judge's order . . . Any party opposing the appeal shall file a responsive brief at least 14 days prior to the date originally noticed for argument. A cross-appeal *related to the subject matter of the original determination* may be filed by the responding party together with that party's opposition and may be noticed for a hearing on the same date as the original appeal . . . .

L. Civ. R. 72.1(c)(1)(A) (emphasis added). The Court finds that Petitioner's cross-appeal is undeniably "related to the subject matter" of the determination appealed by Mr. Barbanel. Accordingly, Petitioner's cross-appeal is timely under the Rules.

15

Under 28 U.S.C. § 1783:

> (a) A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country, or requiring the production of a specified document or other thing by him, if the court finds that particular testimony or the production of the document or other thing by him is necessary in the interest of justice, and, in other than a criminal action or proceeding, if the court finds, in addition, that it is not possible to obtain his testimony in admissible form without his personal appearance or to obtain the production of the document or other thing in any other manner.

28 U.S.C. § 1783(a). As interpreted by Judge Hughes, the statute requires Petitioner to show that "(1) there is a pending proceeding in the United States, (2) the information cannot be obtained through any other source, and (3) the information is necessary in the interest of justice." Mag. J. Op. at 13, *citing* 28 U.S.C. § 1783(a). Petitioner contends that Judge Hughes misinterpreted the first requirement of 28 U.S.C. § 1783, and that his decision to vacate the Section 1783 Order should therefore be reversed.

Indeed, Oxus argues that Judge Hughes erred as a matter of law in vacating the Section 1783 Order "when he ruled that § 1783 cannot authorize service of a subpoena for discovery to be used in proceedings pending *outside the United States*." Resp. Opp'n at 25 (emphasis added), *citing* Mag. J. Op. at 10. Oxus contends in the first instance that Section 1783 should not be read to require the existence of pending proceedings in the United States. Resp. Opp'n at 27. In the alternative, Oxus submits that the legal maneuvering before this Court aimed at securing the right to issue a subpoena under Section 1782 should be deemed to constitute such a "pending domestic proceeding." *Id.*

16

In response, Barbanel contends that the plain language of 28 U.S.C. § 1783 suggests that it may be applied only in connection with proceedings pending in the United States, and notes that Oxus "has failed to identify a single case in which Section 1783 has been invoked in connection with anything other than a domestic proceeding." Resp. Reply at 6-7.

"When interpreting statutes . . . , the first step is to determine whether the language at issue has a plain and unambiguous meaning." *Dobrek v. Phelan*, 419 F.3d 259, 263 (3d Cir. 2005), *citing Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). "The inquiry ends if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Dobrek*, at 263. The language of 28 U.S.C. § 1783 offers no indication that Congress intended for the provision to apply in connection with foreign proceedings. On the contrary, its wording suggests that it was unambiguously intended to apply to domestic proceedings only. Tellingly, and as noted by Judge Hughes, the parties have been unable to cite any case in which Section 1783 was applied in connection with foreign proceedings. *See* Mag. J. Op. at 14.

The Court also finds unavailing Petitioner's claim that the "proceedings" initiated before this Court to obtain discovery from Mr. Barbanel under Section 1782 should be deemed to satisfy the "domestic proceeding" requirement of 28 U.S.C. § 1783. Such an interpretation would allow movants to circumvent the legislature's intent to restrict the scope of Section 1783 to domestic proceedings. The Court hereby rejects it.

Accordingly, the Court concludes that Judge Hughes did not err in holding that 28 U.S.C. § 1783 was not applicable in the case at bar.

### III.     CONCLUSION

For the foregoing reasons, the Court denies both Respondent's Appeal and Petitioner's Cross-Appeal.  An appropriate form of Order accompanies this Opinion.


Dated: April 2, 2007


                                                s/Garrett E. Brown, Jr.
                                                GARRETT E. BROWN, JR., U.S.D.J.